JUAN GARCÍA ROCA y otros, demandantes y apelantes, *v.* CENTRAL ALIANZA, INC., demandada y apelada.

Núm. 9704.—*Sometido:* Diciembre 1, 1948. *Resuelto:* Abril 22, 1949.

*R. B. Pérez Mercado,* abogado de los apelantes; *E. Pérez Casalduc,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

El matrimonio entre Juan García Siberio y Juana Roca Díaz se extinguió con la muerte de la esposa acaecida el 2 de septiembre de 1910. La sociedad de gananciales adquirió dos fincas de 47 y 41.32 cuerdas, respectivamente, en el barrio Los Cocos de Quebradillas y la esposa obtuvo por herencia un condominio de una tercera parte de otra finca de 245½ cuerdas radicada en el barrio San Antonio del mismo término municipal. Ya viudo García Siberio, por escritura

de 8 de diciembre de 1913, compró a sus cuñados los dos condominios de una tercera parte que cada uno poseía en la misma finca del barrio San Antonio. En la escritura de compraventa se consignó por los vendedores que habían vendido a García Siberio "hace algún tiempo" y confesaron haber recibido el precio con anterioridad al otorgamiento de la escritura, pero no se especificó la fecha anterior en que los habían vendido ni la del recibo del precio. En tales circunstancias, estos dos condominios fueron inscritos a favor de García Siberio como de su propiedad privativa.[1] De esta suerte, el capital de García Siberio después de la muerte de su esposa, consistía de su mitad de gananciales en las dos fincas del barrio Los Cocos y de las dos terceras partes de la finca del barrio San Antonio.

Conocemos ya su activo. Examinemos ahora su pasivo. El 13 de octubre de 1910, García Siberio, por su propio derecho y además como padre con patria potestad sobre todos sus hijos, previa la correspondiente autorización judicial, constituyó hipoteca sobre las dos fincas del barrio Los Cocos a favor de Plazuela Sugar Co. en garantía de un préstamo por $5,000. Vencido éste, la acreedora instó procedimientos judiciales para cobrarlo y cuando ya estaba anunciada la subasta, cedió el crédito hipotecario a la Central Alianza por $5,489.30, cantidad que comprendía $5,189.30 de capital e intereses adeudados, más $300 de honorarios de abogado que pagó la cesionaria. De ese modo empezaron las relaciones de negocios entre García Siberio y la ahora demandada. Tomó de ella refacción para sus fincas y esto acrecentó sus deudas considerablemente. Además constituyó una sociedad con su hermano José García Siberio para dedicarse a la

---

[1] Sobre este punto hay conflicto en la prueba, pues aunque la escritura se otorgó en la fecha indicada en la opinión, los demandantes trataron de probar con la declaración de García Siberio que él había comprado los dos condominios en vida de su esposa en el año 1909. La corte inferior no dió crédito a la declaración de García Siberio, pero dado el resultado a que hemos de llegar en esta opinión, es indiferente si los condominios pertenecían a la sociedad de gananciales o privativamente al padre.

siembra y cultivo de cañas en las dos fincas del barrio Los Cocos, recibiendo de la demandada la necesaria refacción. Pero esta sociedad culminó en un desastre económico. Después de algún tiempo tuvieron que disolverla y Juan García Siberio asumió una gran parte de las deudas que la sociedad tenía contraídas con la demandada. Además él estaba adeudando a Gandía & Stubbe, por concepto de abonos, la cantidad de $6,755, según escritura de reconocimiento de deuda otorgada en 1912, sin que hayamos podido encontrar en el récord la fecha en que se inició esta cuenta. Esta firma demandó a García Siberio y a sus hijos en cobro de su crédito el cual fué satisfecho por la Central Alianza por cuenta de aquéllos. También había hipotecado García Siberio sus condominios de dos terceras partes de la finca del barrio San Antonio a favor de Luis Abrams en garantía de un préstamo por la cantidad de $6,720 con intereses al 1 por ciento mensual. En el año 1926 el acreedor hipotecario instó procedimiento de ejecución de la hipoteca, la cual, con los intereses acumulados, montó a $9,280. Además tenía una deuda con Sobrinos de Esquiaga, aunque de la prueba no aparece el montante de la misma ni cuándo fué satisfecha. En vista de su difícil situación económica que lo exponía a perder todo su capital, inclusive la participación de sus hijos en la finca del barrio Los Cocos, recurrió a Andrés Oliver, Presidente de la Central Alianza, Inc., quien, como se colige del récord, siempre había sido su protector. Oliver le prometió que la Central Alianza le ayudaría a proteger sus intereses para lo cual le sometió un plan. Este consistía en levantar fondos con la garantía de las fincas hipotecándolas al Federal Land Bank of Baltimore y con el producto de la transacción saldar todas las deudas de García Siberio incluyendo las de la Central Alianza hasta donde alcanzare el dinero. Para ello era necesario ponerse de acuerdo con Luis Abrams para que continuase la ejecución de la hipoteca de los condominios de la finca del barrio San Antonio, de suerte

que al ser sacadas a subasta fueran compradas por una persona de la confianza de Oliver, y a ese efecto se indicó a Miguel A. Balseiro, a quien la Central suministró el dinero necesario para comprar los condominios en la venta judicial. Como ya Balseiro tenía esa parte de las fincas a virtud de la subasta que se celebró, entonces era preciso que, tanto García Siberio como sus hijos, todos mayores de edad, con excepción de Carmen Virginia, le traspasasen todo su interés en las fincas antes descritas. Hecho esto, Balseiro dividiría la finca del barrio San Antonio en dos parcelas y agruparía las dos fincas del barrio Los Cocos. De ese modo se formarían tres fincas. Una de las parcelas de la finca del barrio San Antonio sería traspasada por Balseiro a Felipe García y la otra a Manuel Oliver Aresti, personas también de absoluta confianza de la Central, reteniendo Balseiro las fincas del barrio Los Cocos ya agrupadas. Estas transacciones eran necesarias porque el Banco no prestaba dinero a una persona en cantidad mayor de $10,000, no importando cuál pudiera ser la garantía de su propiedad. Llevando a cabo lo convenido, García Siberio y sus hijos mayores de edad traspasaron a Balseiro todo su interés en las fincas descritas. Pero entonces tropezaban con la dificultad de que la menor Carmen Virginia no había vendido su participación, y por consiguiente, se creaba una comunidad entre Balseiro y ella. El Banco no haría préstamos sobre condominios y para facilitar la transacción con éste, los dos comuneros dividieron la comunidad por escritura de 31 de diciembre de 1926, en la cual concurrió Carmen Virginia, su esposo y García Siberio para completar su capacidad, obteniéndose previamente la autorización judicial. A virtud de la división de comunidad, Carmen Virginia recibió dos parcelas de terreno de 14.20 y 7.49 cuerdas, respectivamente, que fueron segregadas de las fincas del barrio Los Cocos. Dividida así la comunidad, Balseiro segregó y traspasó a Felipe García una parcela de la finca del barrio San Antonio, con cabida mayor de 100 cuer-

das y el remanente de esa finca lo transfirió a Manuel Oliver Aresti. Entonces los dueños aparentes de las tres fincas, Felipe García, Oliver Aresti y Balseiro, solicitaron del Banco sendos préstamos con garantía hipotecaria sobre las propiedades a su nombre, obteniendo en total la cantidad de $21,100, consignándose uno de los préstamos en escritura de 18 de mayo de 1927 y los dos restantes en escrituras de 19 y 21 del mismo mes. Con esta suma la Central Alianza pagó todas las deudas de García Siberio, pero éste siempre quedó adeudando una considerable cantidad a la Central, pues no solamente le daba ésta refacción, sí que también pagaba sus contribuciones. Liquidadas así las deudas de García Siberio y sus hijos, Manuel Oliver Aresti retrovendió a Juan García Siberio, por escritura de 23 de agosto de 1927, la parcela que se había puesto a su nombre; y tres días después Felipe García y Miguel Balseiro también le retrovendieron sus respectivas fincas.([2]) Dueño éste de la totalidad de las fincas y estando adeudando en aquella fecha a la Central Alianza la cantidad de $15,000, el mismo día 26 de agosto de 1927, siguiendo el plan acordado, hipotecó las dos fincas, es decir, las dos parcelas del barrio Los Cocos ya agrupadas y las del barrio San Antonio a la Central Alianza para garantizarle dicha deuda con intereses a razón de seis por ciento anual. Los hijos de García Siberio se enteraron de la retroventa que a su padre hicieron Balseiro, Oliver Aresti y Felipe García en agosto de 1927, y si bien declaran que les disgustó que el padre aceptara las fincas a su nombre y no exigiera que se distribuyeran entre todos, de acuerdo con las participaciones que a cada uno correspondía, no trataron en forma

---

([2])Existe controversia entre las partes en cuanto a si se convino que una vez obtenido el préstamo del Banco y liquidadas las deudas, las fincas fueran retrovendidas al padre y a los hijos en proporción a sus respectivos intereses. Pero la corte tampoco dió crédito a la prueba de los demandantes en este particular. En realidad, si se examina la declaración de García Siberio, se verá que no es digna de crédito, pues aunque no pudo ser contradicha por Oliver por haber fallecido éste con anterioridad al juicio, su manera de declarar tratando de ignorar cosas que después admitió, hacían dudar de su credibilidad.

alguna de anular esta venta ni de exigir a su padre que les traspasara sus respectivas participaciones. Por el contrario, el padre siguió administrando todas las fincas y recibiendo dinero de la Central para refacción y otras atenciones, hasta que el 29 de agosto de 1929, en vista de que él no podía salir adelante; que la Central había tenido que pagar ya los tres primeros plazos de la hipoteca del Banco, y que la deuda con éste, sumada a la de aquélla, montaba a unos $41,000, fué requerido García Siberio por su acreedora para que le adjudicase en pago las fincas. Ésta, a su vez, le devolvió, según ella, unos $5,000; según García Siberio, solamente $3,000. Además le dió una colocación de $20 semanales, en la cual cesó poco tiempo después. Se otorgó la escritura de adjudicación a favor de la Central el 29 de agosto de 1929. Y el mismo día Carmen Virginia, ya mayor de edad, vendió sus dos parcelas a Miguel A. Balseiro por escritura otorgada ante el notario Miguel Santoni Ledesma, por la cantidad de $2,500, habiendo recibido un cheque por $500 y un pagaré por $2,000, cuyos documentos fueron endosados por ella, y según su declaración, entregados a su padre, quien dispuso del dinero. Posteriormente Balseiro adjudicó a la Central en pago de una deuda, las dos parcelas que había comprado a Carmen Virginia. De ese modo la totalidad de las fincas vinieron a ser propiedad de la demandada.

Para el año 1929 todos sus hijos, incluyendo a Carmen Virginia, eran mayores de edad. Ninguno de ellos protestó de que los terrenos fueran adjudicados a la Central y no fué hasta el 28 de marzo de 1944 que radicaron la demanda en el presente caso, solicitando la reivindicación de las participaciones que les correspondían en las referidas fincas.

La corte inferior declaró sin lugar la demanda y en este recurso los demandantes solicitan la revocación de la sentencia basándose virtualmente en que no existió causa para los traspasos que hicieron los hijos de Juan García Siberio a favor de Balseiro, y que consecuentemente esa transacción fué

inexistente; que la división de comunidad llevada a cabo entre Carmen Virginia y Balseiro fué nula y por último que hubo error manifiesto en la apreciación de la prueba.

A nuestro juicio, la corte inferior ponderó correctamente la prueba. La analizó en todos sus detalles y estamos satisfechos de sus conclusiones de hecho. Pasemos ahora a considerar las cuestiones de derecho.

■■ Es incuestionable que entre Balseiro, Juan García Siberio y sus hijos mayores de edad, no medió precio en dinero al transferir al primero sus condominios, pero no debemos perder de vista que Balseiro actuaba como un representante de la Central Alianza; que tanto García Siberio como sus hijos, estaban en deuda con la Central Alianza por haber ésta adquirido la hipoteca que se constituyó por ellos, previa autorización judicial, a favor de la Central Plazuela; por haber también pagado la Central la hipoteca constituída por García Siberio a favor de Luis Abrams y por último, por estarle adeudando fuertes sumas por concepto de refacción, pago de contribuciones, etc., y los traspasos, no solamente tenían por objeto beneficiar a García Siberio, sí que a sus hijos, pues de haberse ejecutado por la Central Alianza la hipoteca constituída a favor de Plazuela Sugar Co., de haber demandado la Central en cobro de sus deudas no garantizadas con hipoteca y de haberse permitido que la hipoteca de Luis Abrams fuese ejecutada y un extraño adquiriese los condominios de dos terceras partes de la finca del barrio San Antonio, indudablemente el capital de todos los hijos se hubiera reducido, a lo sumo, al condominio de una tercera parte de la finca del barrio San Antonio. Estas consideraciones necesariamente tuvieron que pesar sobre la voluntad de García Siberio y sus hijos, y consecuentemente, constituyeron una causa suficiente del contrato. Manresa, Comentarios al Código Civil Español, t. 8 (2da. ed. 1907) pág. 679. Por esta razón convenimos con la corte inferior en que existió causa para este traspaso a favor de Balseiro, pues si bien

la verdadera causa no fué la que se expresó en la escritura, esto no altera el resultado, ya que, de conformidad con el artículo 1228 del Código Civil, habiéndose probado que existió una causa verdadera y lícita, como lo era salvar las propiedades mediante el plan descrito, la expresión de la causa falsa en la escritura de compraventa a Balseiro, es decir, la confesión del recibo del precio, no produjo la nulidad del contrato. Conforme resultó de la prueba, los hijos de García Siberio habían vivido del producto de esta finca hasta que fueron mayores de edad, y en lo que respecta a Carmen Virginia, hasta que contrajo matrimonio. De manera que cuando ellos consintieron en que el padre siguiera contratando con la Central y recibiendo dinero de ésta para refacción, pago de contribuciones, etc., se embarcaron en una empresa que desgraciadamente fracasó, pero que bien pudo salvar el capital de toda la familia si la suerte no le hubiera sido adversa.

■ La adjudicación que de las fincas hizo García Siberio a la Central Alianza tampoco careció de causa. Él luchó cuanto pudo, pero al convencerse que era imposible salir adelante pues sus deudas, como hemos visto, montaban a $41,000, dió las fincas en pago. Nada hay en la prueba indicativo de que esta transacción se hiciera sin la aquiescencia de los hijos. Por el contrario, el transcurso de quince años sin protesta por parte de ellos tiende a indicar que la adjudicación fué consentida. No se alega que la adjudicación fuera un fraude contra los hijos, pero suponiendo que lo hubiera sido, los quince años que pasaron desde que se hizo la adjudicación en pago en 1929, siendo todos mayores de edad, hasta que se radicó la demanda en 1944, constituirían un impedimento a la acción de nulidad.

■ En lo que a Carmen Virginia respecta, suponiendo que la división de comunidad hubiera sido nula, la transacción fué por ella ratificada cuando ya mayor de edad, vendió a Balseiro sus parcelas por precio de $2,500. *Campos* v.

*Central Cambalache,* 64 D.P.R. 58, confirmado en 157 F.2d 43 (C.C.A. 1, 1946) *certiorari* denegado en 330 U. S. 842.

Por las razones expuestas somos de opinión que no erró la corte inferior al desestimar la demanda de reivindicación.

*Procede la confirmación de la sentencia.*