AUTORIDAD DE FUENTES FLUVIALES DE PUERTO RICO, ETC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE UTUADO, recurrido.

Núm. 1256.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Marzo 17, 1950.

*Gabriel Guerra Mondragón, José A. Vila Ruiz, Antonio M. Bird y C. Domínguez Rubio,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Florentino González y Morales, casado con Antonia Regalada Vargas Cruz, y Juan González y Morales, casado con Dionisia Vargas Cruz, adquirieron e inscribieron a su favor en común proindiviso dos fincas de 33 y 27 cuerdas respectivamente. Por escritura pública núm. 2 otorgada el 23 de enero de 1933 ante el notario Luis Pérez Matos en la cual sólo comparecieron don Florentino y don Juan, casado en segundas nupcias, dieron fin a la comunidad de bienes existente entre ellos, adjudicándose a don Florentino la finca de 33 cuerdas y a don Juan la otra de 27 cuerdas. Dicha escritura, en cuanto a la finca de 33 cuerdas, fué inscrita a nombre de Florentino González y Morales(¹) en el Registro de la Propiedad de Utuado pero no se pidió entonces la inscripción en cuanto a la de 27 cuerdas perteneciente a Juan González Morales y su esposa.

La Autoridad de Fuentes Fluviales aquí recurrente, quien había adquirido por compra la finca de 27 cuerdas, para poder inscribirla a su nombre solicitó la inscripción de la escritura núm. 2, supra, a nombre de Juan González Morales para luego inscribirla, a virtud de la escritura núm. 149 de 4 de septiembre de 1943 sobre partición de bienes, a nombre de los herederos de la esposa de este último, la cual no había comparecido al momento de otorgarse la escritura núm. 2 sobre disolución de la comunidad, por razón de haber fallecido antes del otorgamiento de la misma.

Al presentársele al Registrador copia de la escritura núm. 2 por la cual se le adjudicó a don Juan la finca de 27 cuerdas y la que sirvió de base para inscribir la otra finca perteneciente a don Florentino de 33 cuerdas, denegó la inscripción solicitada a virtud de la siguiente nota:

"Denegada la inscripción del precedente documento, que es copia de la escritura número 2, otorgada en Utuado, el 23 de enero de 1933, ante el Notario Luis Pérez Matos, con vista de otros complementarios y en cuanto a la finca de que única-

---

(¹) De los documentos ante nosotros no aparece si se inscribió también a nombre de su esposa.

mente se solicitó inscripción, por los defectos insubsanables siguientes: PRIMERO: porque a la división de comunidad no concurrió ni prestó su consentimiento, Antonia Regalada Vargas Cruz, esposa de Florentino González Morales, como condueña que era en las fincas objeto de la división adquiridas constante la sociedad conyugal: SEGUNDO: porque tampoco concurrieron ni prestaron su consentimiento a la división de comunidad, los herederos de la finada, Dionisia Vargas Cruz, esposa que fué de don Juan González Morales y como tal condueños también en las dos fincas objeto de la división adquiridas durante aquella sociedad conyugal: TERCERO: porque la falta de consentimiento de tales partes interesadas vician el contrato de división de comunidad, convirtiéndolo en nulo abinitio o inexistente: CUARTO: porque siendo así, no cabe aceptar que el otorgamiento de la escritura de partición acompañada como complementaria, pueda surtir los efectos de una confirmación o ratificación tácita de aquel contrato de división de comunidad que no reunió los requisitos que exige el artículo 1262 del vigente Código Civil o sean los que expresa el artículo 1213 del mismo texto. En su lugar, se tomó anotación preventiva por el término legal de 120 días. . ." (¹ª)

No conforme la recurrente señala como errores cometidos por el Registrador los motivos que aparecen en su nota denegatoria.

■■ La contención de la recurrente en cuanto al primer fundamento expuesto en la nota del Registrador es al efecto de que habiendo un Registrador anterior calificado e inscrito copia de la escritura núm. 2 en cuanto a la finca de 33 cuerdas adjudicada a Florentino González, a pesar de no

---

(¹ª) Con el objeto de subsanar las objeciones antes señaladas por el Registrador, la recurrente presentó ante el mismo los siguientes documentos: escritura núm. 2 sobre división de comunidad; escritura núm. 149 sobre partición de bienes; certificación del Registrador de la Propiedad de Utuado de fecha 3 de julio de 1947 que acredita la inscripción de la finca a nombre de los herederos de don Florentino; certificación de otro Registrador anterior al presente sobre inscripción en el Registro de la Propiedad de Utuado de la finca de 33 cuerdas; copia de la escritura donde la viuda de don Florentino y los herederos de éste le venden a la Autoridad de Fuentes Fluviales una parcela de 4.56 cuerdas que segregaron de la finca de 33 cuerdas. Después de estudiar estos documentos, el Registrador denegó la inscripción por los mismos fundamentos arriba transcritos.

haber comparecido la esposa de este último, las facultades del presente Registrador "no alcanzan a calificar de nuevo el propio documento en cuanto a los defectos de que adolece relacionados con la otra finca en ella adjudicada a don Juan, y ni en lo que respecta a la eficacia legal del contrato que tal escritura comprende, y que tiene que estar y pasar por lo actuado por su antecesor".

El recurrido sostiene que él no está calificando de nuevo la escritura en cuanto a la finca ya inscrita, cosa que él no puede hacer por negárselo la ley y la jurisprudencia; que solamente se ha limitado a calificar la escritura núm. 2 como si nunca antes se hubiera presentado al Registro, en relación con la finca de 27 cuerdas que ahora se pretende inscribir.

Dos son las cuestiones a resolver en este recurso, a saber: primero, si habiéndose inscrito por un Registrador anterior al presente en el Registro de la Propiedad de Utuado la escritura núm. 2 sobre división de comunidad en cuanto a la finca de 33 cuerdas, viene obligado el actual Registrador por dicha inscripción en tal forma que no pueda calificar de nuevo dicha escritura y denegar su inscripción en cuanto a la otra finca de 27 cuerdas, y segundo, si los documentos complementarios presentados al Registrador demuestran que los herederos de la esposa de don Juan confirmaron la división de la comunidad efectuada por éste.

Es doctrina firmemente establecida que al calificar, bajo la autoridad que les confiere el artículo 18 de la Ley Hipotecaria, (²) las escrituras que se le presentan para su ins-

(²) El artículo 18 de la Ley Hipotecaria dispone:
"Los Registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.
"Del mismo modo calificarán, bajo su responsabilidad y para el único efecto de admitir, suspender o negar su inscripción o anotación, todos los documentos expedidos por la Autoridad judicial.
"Contra la suspensión o denegación de inscripción o anotación preventiva no se darán más recursos que los señalados en esta Ley, sin que los Jueces o Tribunales puedan obligar en otra forma a los Registradores a que inscriban o anoten en virtud de documentos judiciales."

cripción, los registradores no están facultados para determinar la legalidad de los asientos ya extendidos por sus predecesores. *Rosado* v. *Registrador*, 68 D.P.R. 594 y casos citados a la pág. 599. Esta no es, sin embargo, la situación en el presente caso pues el Registrador recurrido no se ha negado a inscribir el documento en cuanto a las 27 cuerdas se refiere atacando la legalidad de la inscripción anterior relacionada con la finca de 33 cuerdas. Él se ha limitado a calificar de nuevo el documento en cuanto a las 27 cuerdas no inscritas. Sostiene la recurrente que de acuerdo con el caso de *Gerena* v. *El Registrador de Humacao*, 26 D.P.R. 87, una vez inscrito un documento contentivo de una partición de bienes en cuanto a determinadas adjudicaciones, no puede luego calificarse de nuevo el documento por otro Registrador y negarse la inscripción en el mismo Registro en cuanto a las restantes adjudicaciones por motivos que tuvieron necesariamente que ser considerados al verificarse la inscripción anterior.

Así se resolvió en efecto, pero consideramos que erróneamente. Para sostener dicha conclusión, se citaron tres resoluciones de la Dirección General de los Registros de España, interpretando el artículo 18 de la Ley Hipotecaria, fechadas el 16 de enero de 1882, el 21 de enero de 1897 y el 17 de octubre de 1898, respectivamente, al efecto todas ellas de que la facultad concedida a los Registradores para calificar la legalidad de las escrituras "se refiere única y exclusivamente a los documentos no inscritos o que por primera vez se presenten para su inscripción en el registro". Empero, estas resoluciones no tienen el alcance que se les dió en el caso de *Gerena* v. *Registrador*, supra, ya que, según señala correctamente el Registrador recurrido, la propia Dirección General de los Registros de España, en varias resoluciones posteriores (pero anteriores al año 1918 en que se resolvió el caso de *Gerena*) aclaró el alcance de las mismas. Así, en la resolución de 28 de junio de 1907, Dirección General de los Registros, Anuario 1907, págs. 286–7, se sostuvo que:

"Considerando: en cuanto a la facultad del Registrador de Sabadell para calificar nuevamente la escritura motivo del presente recurso, no obstante haber sido ya inscrita en el Registro de Tarrasa, del que aquél formaba parte, que el artículo 18 de la Ley Hipotecaria concede en absoluto a los Registradores de la propiedad la facultad de calificar los títulos cuya inscripción se pretenda, y que si bien en las citadas Resoluciones se declara que una vez inscrito no pueden volver a ser objeto de nueva calificación en el mismo Registro, *esto ha de entenderse con refe-. rencia a lo que consignado en el título haya sido objeto de inscripción, mas no respecto de otros extremos, que, aunque comprendidos en el mismo, no hayan sido calificados,* por lo cual, no habiendo sido inscrita la escritura en cuanto al derecho contenido en el pacto 7º., es indudable que el Registrador de Sabadell ha podido y debido calificar si tal derecho era o no inscribible al solicitarse su inscripción;" (Bastardillas nuestras.)

Y en la de 7 de mayo de 1907, ob. cit. pág. 259:

"Considerando: que no estando inscrita la adjudicación de bienes hecha a don Manuel Martínez Monedero en la partición de la herencia de sus causantes, es evidente la facultad que para calificarla tiene el Registrador con arreglo al artículo 18 de la Ley Hipotecaria, *sin que a ello obste el que en el mismo Registro se hayan inscrito otras adjudicaciones verificadas en dicha escritura de partición, que serían solamente las que, por ese hecho de estar ya inscritas, no podría volver a calificar;"* (Bastardillas nuestras.)

Comentando Morell y Terry el artículo 18, supra, cita éstas y otras resoluciones, diciendo:

"La calificación es más bien que una facultad, *una obligación* que se impone al Registrador para que sólo figuren en el Registro los actos que sean válidos con arreglo a derecho. No puede en modo alguno el Registrador excusarse de esta obligación, por el hecho de haber sido ya calificados los documentos en otro Registro (Resolución de 28 de junio de 1907), *o aun en el mismo con relación a derechos no inscritos antes* (Resolución de 7 de mayo del mismo año), *pues el hecho de haber mediado una calificación anterior, no priva del derecho ni exime del deber de volver a calificar* (Resoluciones de 27 de mayo y 20 de julio de 1902). . . ." (Bastardillas nuestras.) Comentarios a la Legislación Hipotecaria, tomo 2, pág. 238.

Y a la pág. 244:

"En cuanto a los documentos presentados para ser inscritos, ·ya dijimos *que podían ser calificados varias veces*, en el caso en que esto sea posible, pues es claro que una vez inscritos en cuanto *a todas las fincas o derechos*, no cabe nueva calificación; pero sí cuando *falte algo por inscribir*, y cuando se hubiere antes suspendido o denegado la inscripción y se estime procedente una calificación distinta. (Resoluciones de 27 de mayo y 20 de julio de 1902, 7 de mayo y 28 de junio de 1907.)" (Bastardillas nuestras.)

Pero es que, no obstante lo resuelto en *Gerena* v. *Registrador*, supra, dicho caso implícitamente quedó revocado por nuestra decisión en el de *López* v. *Registrador*, 58 D.P.R. 1, en el cual, aplicando la misma doctrina establecida en las resoluciones de la Dirección General de 7 de mayo de 1907 y 28 de junio de 1907, aun cuando no se citaran en la opinión, resolvimos la misma cuestión planteada en el de *Gerena* en forma contraria. En ambos casos se trataba de inscribir la adjudicación hecha a un heredero, cuando ya se habían inscrito otras adjudicaciones relacionadas en el mismo documento, habiendo denegado el Registrador la segunda inscripción. En *Gerena* v. *Registrador* dijimos que no podían hacerlo. En *López* v. *Registrador*, supra, resolvimos lo contrario diciendo:

"El registrador es responsable de sus propias calificaciones y no podría excusarse por un error por él cometido, alegando que aceptó como buena una calificación errónea hecha por su antecesor al practicar una inscripción anterior. Véase: Morell y Terry, tomo 2, página 238."

El caso de *Gerena* v. *Registrador*, supra, debe considerarse expresamente revocado. Teniendo facultad el Registrador para calificar de nuevo la escritura núm. 2, supra, en tanto en cuanto atañe a la finca de 27 cuerdas que no había sido inscrita en el Registro, pasamos a considerar si erró o no el recurrido al calificarla de nula y denegar su inscripción.

Es un hecho admitido e indiscutible que en la escritura núm. 2 sobre división de comunidad sólo comparecieron don Florentino y don Juan González, no obstante estar viva la esposa del primero, Regalada Vargas y Cruz, y existir ocho hijos del matrimonio del segundo con su esposa Dionisia Vargas y Cruz, fallecida tres años antes. Tampoco cabe discutir que, siendo la división de la comunidad y adjudicación de los bienes de la misma a los distintos condueños, un acto traslativo de dominio—3 Manresa, Comentarios al Código Civil Español, págs. 522, 527—para que sea inscribible en el Registro de la Propiedad la escritura de división es requisito indispensable, según sostiene Manresa al comentar el artículo 400 del Código Civil de España igual al 334 del nuestro(3) "que al otorgamiento de la partición hubiesen concurrido todos los interesados, sin que ninguno de ellos en particular pueda ejercer actos de dominio sobre los inmuebles ya divididos, sin la inscripción previa de la división.. (Resoluciones de 10 de septiembre de 1864, 19 de noviembre de 1889 y 15 de abril de 1893)." Ob. cit. pág. 523. Y a la pág. 524 dice:

"Las dudas han surgido de que la jurisprudencia hipotecaria ha exigido (Resoluciones de 10 de septiembre de 1864 y 19 de noviembre de 1889) la concurrencia de *todos los partícipes* al otorgamiento de la escritura de división, la cual en otro caso, *adolece de un vicio que la invalida y la hace no inscribible,* según afirma categóricamente la última de las dos citadas Resoluciones." (Segundas bastardillas nuestras.)

En Odriozola, Diccionario de Jurisprudencia Hipotecaria de España, pág. 352, se cita la Resolución de 26 de noviembre de 1875, diciéndose:

"Cualquiera que sea la doctrina que prevalezca sobre la naturaleza jurídica de los actos de partición de la cosa común, ya se les considere como traslativos de dominio de cada una de las

---

(3) El primer párrafo del artículo 334 dispone:
"Ningún copropietario está obligado a permanecer en la comunidad. Cada uno de ellos podrá pedir en cualquier tiempo que se divida la cosa común."

partes adjudicadas a los condueños, ya se les califique como declarativos del dominio sobre esas mismas porciones, es evidente que los referidos actos de partición deben celebrarse *por todos los que sean condueños, según el Registro, o por sus legítimos representantes o causa-habientes,* debidamente acreditada la personalidad en estos casos, *a fin de que tales actos sean válidos y puedan ser inscritos en el Registro de la propiedad."* (Bastardillas nuestras.)

Siendo esto así, nos confrontamos con el hecho de que en la escritura núm. 2, supra, al comparecer Juan González y Morales, hizo constar lo siguiente:

"Segundo:—Manifiesta ahora don Juan González y Morales que su primera esposa, doña Dionisia Vargas Cruz, falleció en esta misma Ciudad de Utuado el día primero de diciembre de mil novecientos treinta, sin otorgar disposición testamentaria, dejando de su único matrimonio con el declarante los siguientes hijos: Juana, Josefa, Águeda, Bernabela, Francisca, Hipólito, Pedro y Ramón."

No se dice si esos ocho hijos eran menores o mayores de edad en el año 1933 cuando se otorgó dicha escritura. Si todos ellos eran menores de edad, el padre podía, sin la previa autorización judicial, proceder a la división de la comunidad. Sin embargo, como en dicha escritura no se hizo adjudicación que equivaliera a una enajenación específica de las participaciones de los menores, no era necesaria la intervención judicial.(1) *Sánchez* v. *Registrador de la Propiedad,* 21 D.P.R. 478; *Martínez et al.* v. *El Registrador de Caguas,* 23 D.P.R. 356; *Burset* v. *Registrador,* 49 D.P.R. 49; *Costa* v. *Piazza,* 51 D.P.R. 689; *Aponte* v. *Registrador,* 56 D.P.R. 834; *West India Oil Co. (P. R.)* v. *Blanch,* 57 D.P.R. 591, y, como consecuencia, la escritura sería válida. Si los ocho hijos de Juan González, o algunos de ellos, eran mayores de edad cuando se otorgó la escritura en el año 1933, es obvio que eran necesarias e imprescindibles sus compa-

---

(1) En ese caso sí sería necesaria la autorización judicial previa. *Milán* v. *Registrador,* 41 D.P.R. 98; *Mercado* v. *Registrador,* 41 D.P.R. 520; *Burset* v. *Registrador,* 49 D.P.R. 49.

recencias en la escritura y que el padre no podía, por sí solo, comparecer y llevar a efecto la división de la comunidad en cuanto a bienes de la sociedad de gananciales, la mitad de los cuales pertenecían a sus hijos por herencia de su madre.

Sostiene, sin embargo, la recurrente, que de los documentos complementarios presentados al Registrador con la escritura núm. 2, surge que todas las partes interesadas confirmaron o ratificaron la división de la comunidad que se realizó por dicha escritura y que no siendo ésta nula en el sentido de inexistente, sino meramente anulable, dicha confirmación es suficiente para que el Registrador esté obligado a inscribirla en cuanto a la finca de 27 cuerdas.

Los documentos complementarios demuestran que diez años después de otorgada la escritura núm. 2, o sea el 4 de septiembre de 1943 se otorgó la escritura núm. 149 ante el notario Luis Pérez Matos sobre partición de bienes, en la cual comparecieron Juan González Morales y sus ocho hijos, mayores de edad todos, quienes habían sido declarados herederos de su madre doña Dionisia, y procedieron a la partición de la finca de 27 cuerdas que fué adquirida, según se hace constar, por la escritura núm. 2 sobre división de comunidad otorgada el 23 de enero de 1933, adjudicándose la mitad de la finca—13½ cuerdas—como ganancial, a don Juan y la otra mitad de la finca se dividió en parcelas pequeñas entre los ocho hijos.

Demuestran además otros documentos que la finca de 33 cuerdas adjudicada a don Florentino González e inscrita a su nombre, a su fallecimiento fué inscrita a nombre de su sucesión compuesta por su viuda Antonia Regalada Vargas y sus cinco hijos, todos mayores de edad, y que todos éstos en el año 1948, por escritura pública vendieron a la Autoridad aquí recurrente, cuatro cuerdas con cincuenta y seis milésimas de dicha finca, habiéndose inscrito dicha venta en el Registro. No está ante nuestra consideración en este recurso la validez de las inscripciones que en el Registro se

han hecho de la finca de 33 cuerdas, ya que el Registrador correctamente sostiene que no podía calificar de nuevo la escritura núm. 2 en cuanto a dicha finca se refiere.

Creemos que tiene razón la recurrente y que si bien la escritura núm. 2 adolecía de los defectos anteriormente apuntados que la hacían anulable, no habiéndose solicitado su nulidad por ninguna de las partes afectadas en cuanto a la finca de 27 cuerdas y, por el contrario, habiendo aceptado todas ellas posteriormente, siendo mayores de edad, las adjudicaciones que en dicha escritura se hicieron y hasta dispuesto de parte de las fincas,(5) dicho contrato de división ha quedado confirmado.

Hemos resuelto en el caso de *García* v. *Central Alianza*, 69 D.P.R. 916, citando del Sumario, que:

"Suponiendo que la división de una comunidad en que una menor tenía interés fuera nula, si al llegar ésta a su mayoría vende la parcela que en la división mencionada le fué adjudicada, con ello ratifica la división de comunidad efectuada entre los condóminos."

Y véase *Campos* v. *Central Cambalache*, 64 D.P.R. 58, confirmado en 157 F.2d 43 (C.C.A. 1, 1946), *certiorari* denegado en 330 U. S. 842.

*Debe revocarse la nota recurrida y ordenarse la inscripción solicitada.*

---

(5) Es un hecho admitido que la recurrente interesa la inscripción de la escritura núm. 2 en cuanto a las 27 cuerdas por haber adquirido algunas parcelas de la misma.