ERNESTINA GIROD LUBE y otros, demandantes y recurridos, *v.* HILDA ORTIZ ROLÓN y ELÍAS ACEVEDO, demandados y recurrentes.

*Número:* CE-66-1      *Resuelto:* 3 de mayo de 1967

*Carlos J. Irizarry Yunqué*, abogado de los recurrentes; *Ubaldo Aponte*, abogado de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Los demandantes recurridos, miembros de la Sucn. Girod, interpusieron acción civil en la Sala de Guayama del Tribunal de Distrito contra los recurrentes y alegaron que el 30 de diciembre de 1954 vendieron a Vicente Colón Morales un solar de 180 metros cuadrados; que por un error involuntario, sin que mediara causa o consideración alguna, los demandantes traspasaron a Colón Morales un solar de 454 metros cuadrados; que los demandados, posteriores adquirentes y dueños de la propiedad al interponerse la demanda, detentaban, usurpaban y poseían ilegalmente contra la voluntad de los demandantes un predio de 274 metros cuadrados incluido en el perímetro del solar de 454 metros, y que los demandantes eran los únicos y exclusivos dueños del predio de 274 metros ya referido. Solicitaron sentencia que obligara a los demandados a entregarles el referido predio de 274 metros cuadrados.

Los demandados citaron en evicción a Antonio Amaro y su esposa, personas de quienes adquirieron la propiedad. Éstos se personaron en el pleito e hicieron citar en evicción a Vicente Colón y esposa, personas de quienes a la vez ellos adquirieron el inmueble. Colón Morales compareció por su propio derecho, dijo que aceptaba los hechos alegados en la demanda y expuso que había advertido a Amaro que sólo le vendía el solar "cercado con tela metálica y tubos de hierro que eran los espeques que cercaban el solar" adquirido por él; que Amaro aclararía la escritura con los demandantes a fin de establecer la verdadera cabida comprada, y que vendió más adelante el solar según aparecía erróneamente descrito en todas las escrituras.

Los demás demandados negaron los hechos de la demanda así como las alegaciones de Colón Morales. Levantaron defensas especiales de prescripción, de incuria por parte de los demandantes y de impedimento de éstos de ir contra sus propios actos.

Con la prueba practicada en la vista del caso las partes lo dieron por sometido para que se resolvieran las defensas especiales. La Sala de Guayama del Tribunal de Distrito dictó sentencia declarando prescrita la demanda, bien bajo el Art. 1361 del Código Civil, ed. 1930, o ya bajo su Art. 1253. En apelación, la Sala de Guayama del Tribunal Superior revocó, a base de que el caso envolvía una cuestión imprescriptible de inexistencia de contrato.

La cuestión en litigio requiere una exposición de la prueba.

(1) Por escritura Núm. 256 otorgada en Guayama el 30 de diciembre de 1954 ante el Notario Ubaldo Aponte, los demandantes recurridos manifestaron ser dueños de un predio de 83 varas de frente y 57 varas de fondo situado en la Calle Jobos de Guayama, debidamente inscrito en el Registro de la Propiedad. En el hecho cuarto de la escritura hicieron constar los vendedores recurridos:

"Que los comparecientes de la primera parte, previa aprobación de la Honorable Junta de Planificación de Puerto Rico de fecha veinticinco de junio de mil novecientos cincuenta y cuatro en el caso número catorce mil trescientos cuarenta y cuatro (14,344), segregaron del solar descrito que constituye la finca principal, el solar que se pasa a describir: ........................................
................"URBANA:—Solar radicado en la ciudad de Guayama, compuesto de cuatrocientos cincuenta y cuatro metros cuadrados en lindes por el Norte, en doce metros con la calle Enrique González; por el Sur en diez y nueve metros con ochenta centímetros con terreno del Departamento de Instrucción; por el Este, en treinta y siete metros cincuenta centímetros con la finca principal de que se segrega propiedad de Sucesión de Ernesto Girod Denis y por el Oeste en veintiocho metros con terrenos del Departamento de Instrucción."—

A dicho solar segregado dieron un valor de $800 y así segregado lo vendieron a Vicente Colón Morales por esa cantidad, dinero que el Notario dio fe de que se pagó en su presencia. Unido a la escritura de compraventa aparece un Informe de la Junta de Planificación de Puerto Rico de 25 de junio de 1954 aprobando la segregación antes mencionada, en donde se describe el solar segregado en forma idéntica a la anterior descripción. Este Informe expresa que la lotificación fue sometida por la Sucn. de Ernesto Girod por conducto del Sr. Vicente Colón Morales.

(2) Por escritura Núm. 7 otorgada en Guayama el 16 de febrero de 1955 ante el Notario Tomás Bernardini Palés, Vicente Colón Morales vendió esta propiedad tal y como se describe anteriormente a Antonio Amaro. Hizo constar el vendedor Colón Morales que en el solar él tenía una casa en proceso de construcción, ya para terminarse, de 20 pies de frente por 34 pies de fondo y en ese acto entregó al comprador el permiso de construcción de la Junta así como el plano de la edificación.

(3) Por escritura Núm. 153 otorgada en Guayama el 6 de octubre de 1958 ante el Notario Ubaldo Aponte, Antonio Amaro vendió a la demandada recurrente Hilda Ortiz Rolón el referido solar con igual descripción a la que aparece en el apartado número uno anterior, más la edificación ya terminada.

(4) Según plano del solar que obra en evidencia, con las medidas longitudinales expresadas en los diferentes documentos de ventas y en el Informe de segregación de la Junta, los lados laterales de 37.50 metros por el Este y 28 metros por el Oeste son paralelos, y perpendiculares ambos a su frente de 12 metros en la calle González, y formaría un rectángulo completo a no ser por su lado del fondo. El solar de 180 metros descrito en la demanda que los demandantes alegan fue el que vendieron a Morales, ocuparía la porción frontal de 12

metros con un alegado fondo de 15 metros, formando un completo rectángulo. El área de 274 metros objeto del pleito sería el remanente del solar hasta llegar a la colindancia del fondo. (¹)

(5) Aun cuando no se ha elevado con la prueba documental, entre los documentos que tuvo ante sí al resolver, la Sala de Distrito mencionó el *Exh. C.* de la parte demandada, un plano de tasación #420-041 de Guayama, que lleva fecha de 6 de agosto de 1949 en que aparece el solar objeto del pleito descrito con las mismas medidas en que aparece en la escritura de venta de los demandantes, Núm. 256, y en todas las otras.

(6) La prueba oral consistió de la declaración de Vicente Colón Morales quien declaró que en 30 de diciembre de 1954 la Sucn. Girod le vendió un pedazo de terreno en un solar frente a la Calle Enrique González; compró 180 metros; le vendió el solar a Antonio Amaro y no le aclaró; le vendió arreglado a los puntos que le dio Girod. En esos puntos puso espeques de hierro con concreto abajo, cerrado por todos lados. Planificación midió el terreno en su presencia que ya estaba cercado. Cercó para cuando Planificación viniera. El testigo nunca midió. Pagó $800 por el pedazo. Planificación le dijo que debía cuadrar el pedazo y Girod le cedió gratis un pedazo para cuadrar. No pudo precisar si el solar tenía la forma del plano. Cuadró para el lado del fondo.

El Hon. Filiberto Santiago, de la Sala de Distrito, hizo constar que no daba crédito a la declaración del testigo en el sentido de que él comprara 180 metros y se basaba en su observación personal sobre su manera de declarar. El decla-

---

(¹) Hay un error de cabida en toda la documentación, el cual nadie parece haber observado. Las medidas longitudinales del solar segregado que aparecen en el Informe de la Junta así como en todas las demás escrituras, dan una cabida correcta de 393 metros cuadrados en lugar de 454. La porción de 274 metros que reclaman los demandantes, de acuerdo con sus propias medidas, tiene una cabida de 213 metros en lugar de 274.

rante tenía 75 años de edad. A juzgar por el resto de dicho testimonio, no nos parece que la Sala estuviera carente de base al concluir así.

Dándole crédito, sin embargo, este testigo no sostiene la posición de los demandantes sobre la inexistencia de un contrato. Según su testimonio y a los efectos de la lotificación solicitada, Planificación midió lo que el testigo dice que tenía cercado con alambre y tubos; y que él cercó por los puntos o señas que le diera Girod al venderle el pedazo a precio alzado. Por otra parte, desde 1949 aparecía el solar en un plano oficial de tasación con las medidas con que aparece vendido a Colón Morales. Por lo expuesto en el apartado (4) anterior en cuanto a la posición relativa del solar vendido y el que los demandantes alegan quisieron vender, resulta incuestionable el hecho que de haber vendido Girod sólo 180 metros de los 454 (correctamente 393) metros que tenía el solar, se habría producido materialmente una sub-segregación del solar segregado de la finca mayor, sin aparente intervención o autorización de la Junta. Conforme a las circunstancias del récord, es improbable que existiera en la mente de las partes tal sub-segregación. Hay el hecho adicional que Colón Morales edificó de inmediato una residencia en el solar que comprara por la escritura 256, para lo cual obtuvo el necesario permiso de la Junta. A tenor de los reglamentos vigentes no se autorizaban lotificaciones para residencias en tamaño menor de 300 metros, lo cual hace improbable también que se le hubiera concedido permiso para construir en un solar de 180 metros.

■ Consideremos el derecho envuelto. Estatuye el Art. 280 del Código Civil, ed. 1930, que el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla. La de autos no es sino una acción reivindicatoria de 274 (213 correctamente) metros de la porción trasera del solar segregado y vendido de 454 (393) metros. La demanda no solicita el abono de mayor precio ni la rescisión del contrato. El que

reivindica debe ser el propietario o dueño de la cosa. Cf. *Banco Territorial y Agrícola* v. *Arvelo,* 7 D.P.R. 566 (1904) ; *Amy* v. *Amy,* 15 D.P.R. 415 (1909) ; *Gay* v. *Vega,* 39 D.P.R. 647 (1939) ; *Gallardo* v. *Quintana,* 43 D.P.R. 162 (1932) ; *Sosa* v. *Fidalgo,* 56 D.P.R. 50 (1940) ; *Sucn. Arce* v. *Sierra,* 70 D.P.R. 841 (1950). Procede entonces determinar si existió o no en algún momento un contrato de compraventa entre la Sucn. Girod y Colón Morales.

Dispone el Art. 1213 del Código Civil, ed. 1930, que no hay contrato sino cuando concurren el consentimiento de los contratantes, un objeto cierto que sea materia del contrato y una causa de la obligación que se establezca. El consentimiento se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato—Art. 1214—y conforme al récord las partes en este caso no caen entre aquellas incapaces de prestar consentimiento—Art. 1215—. El objeto del contrato puede ser cosa determinada en cuanto a su especie sin que la indeterminación de la cantidad sea obstáculo para su existencia si es posible determinarla sin necesidad de un nuevo convenio—Art. 1225—. La causa ha de entenderse para cada parte contratante, en lo que ahora nos concierne, como la prestación o promesa de una cosa o servicio por la otra parte—Art. 1226—. Dispone el Art. 1227 que los contratos sin causa o con causa ilícita, no producen efecto alguno, y es ilícita la causa cuando se opone a las leyes o a la moral. La expresión de una causa falsa da lugar a la nulidad, si no se probase el contrato fundado en otra verdadera y lícita, y la existencia de causa siempre se presume, y que es lícita, mientras el deudor no pruebe lo contrario—Arts. 1228, 1229—.

▮ Conforme al derecho expresado, no puede concluirse a la luz de la prueba en el récord que se trata aquí de una inexistencia de contrato por ausencia radical de los elementos necesarios para su constitución. No se trata de un contrato

simulado, ni de uno con inexistencia de consentimiento o inexistencia de objeto o inexistencia de causa. Cf. *Hernández v. Ayala*, 68 D.P.R. 956 (1948), *González Rodríguez v. Fumero*, 38 D.P.R. 556 (1928) ; *Logia Caballeros del Plata v. García*, 63 D.P.R. 291 (1944) ; *García v. Central Alianza*, 69 D.P.R. 916 (1949) ; *Olivieri v. Tornabells*, 7 D.P.R. 92 (1904). Como en *Goenaga v. O'Neill de Milán*, 85 D.P.R. 170, pág. 214 (1962), aquí la fuente principal de las relaciones jurídicas entre las partes fue el contrato de compraventa entre Girod y Colón, y los subsiguientes contratos hasta la adquisición de la demandada. De esa prueba ni de la verbal producida, surge la inexistencia que halló la Sala Superior. Siendo así, no es aplicable a este caso la doctrina de imprescriptibilidad de la acción. *Santiago v. Rodríguez*, 72 D.P.R. 266 (1951) ; *Rivera v. Sucn. Díaz Luzunaris*, 70 D.P.R. 181 (1949) ; *González v. Sucn. Díaz*, 69 D.P.R. 643 (1949) ; *Boscio v. Vilá*, 67 D.P.R. 604 (1947) ; *Ramírez v. Ramírez*, 65 D.P.R. 544 (1946) ; *Logia Caballeros del Plata v. García*, ante; *Solá v. Castro et al.*, 32 D.P.R. 804 (1924) ; *González Rodríguez v. Fumero*, supra; *Rodríguez v. Sucn. Pirazzi*, 89 D.P.R. 506 (1963). El contrato no cae bajo una nulidad radical por inexistencia del negocio jurídico. Se aplican, entonces, las normas de prescripción.

Bajo la teoría del error alegado en la demanda, dispone el Art. 1252 del Código Civil, ed. 1930, que los contratos en que concurran los requisitos que expresa el Art. 1213 pueden ser anulados siempre que adolezcan de algunos de los vicios que los invalidan con arreglo a la ley. (²)

■ Según el Art. 1217, el consentimiento dado por error es nulo, pero, para que el error invalide, deberá recaèr sobre la sustancia de la cosa objeto del contrato. El error no se

---

(²) No consideramos aplicables en este caso las disposiciones de los Arts. 1358, 1359 y 1360 del Código Civil, e inaplicable en su consecuencia el período prescriptivo que fija el Art. 1361.

presume,—*Mancheño* v. *Le Brun*, 14 D.P.R. 474 (1908);
*Capó Caballero* v. *Ramos*, 83 D.P.R. 650 (1961),—basado
ello en el principio de interés público del *pacta sunt servanda*,
y en el récord no quedó probado. La escritura de compraventa
256 hizo constar no sólo la cabida global del predio vendido de
454 (393) metros segregados de una finca mayor, sino tam-
bién sus medidas longitudinales de 28 metros de fondo por
un lado y 37.50 por el otro, con un frente de 12 metros. Con
estas medidas era de fácil comprobación que no se estaban
vendiendo 180 metros cuadrados, si es que esto era lo que
había en la mente de los vendedores.

Dijimos en *Capó Caballero* v. *Ramos*, ante, que para que el
error anule el negocio es preciso que aquél sea excusable, que
derive de actos desconocidos del obligado sin que el desconoci-
miento pudiera ser evitado con mediana prudencia o diligen-
cia, y que tampoco sea imputable al que lo sufre o invoca.
Lo inexcusable se presume, luego la excusa del error hay que
probarla cumplidamente.

▮ En virtud de la enajenación hecha por la escritura
256 a favor de Colón, los demandantes no son dueños del
predio que intentan reivindicar de los propietarios actuales.
Fallándoles la condición de dueños, no tienen causa para una
acción reivindicatoria, a menos que el contrato de venta ya
mencionado se anule en esta acción en lo que respecta al
predio en litigio. Concediéndoles a los demandantes todo el
beneficio de un error en dicho contrato que invalidara el
consentimiento, esta acción para declarar su nulidad está
prescrita, por cuanto la escritura se otorgó en 30 de di-
ciembre de 1954 y la demanda se interpuso el 21 de marzo
de 1960. Conforme al Art. 1253 la acción de nulidad dura
4 años, que en caso de *error*, comienza a extinguirse desde
la consumación del contrato.

*Se revocará la sentencia dictada en apelación por la Sala
de Guayama del Tribunal Superior, y se le devolverán los*

*autos para que dicte otra confirmando la de la Sala de Distrito que desestimó la demanda.*