JUAN ESTÉVEZ GÓMEZ, recurrente, *v.* REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1206.—*Sometido:* Abril 9, 1947. *Resuelto:* Mayo 23, 1947.

*José Sabater,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

En la escritura núm. 138 de 14 de junio de 1946, ante el notario José Sabater García, Doroteo Estévez Gimeno, luego de describir varias fincas de su propiedad, expuso que había convenido con su hijo, el otro compareciente, Juan Estévez Gómez, en adjudicárselas en pago de deuda. Llevando a cabo lo convenido y bajo el título "Exposición de la Deuda," declaró en dicho documento que desde el año 1926 su hijo prácticamente se había encargado de la administración de sus bienes debido a su avanzada edad y al hecho de que iba perdiendo su vista; que para poder prestarle tales servicios su hijo casi abandonó su carrera de abogado; que ese trabajo lo realizó sin interrupción hasta el año 1941, sin haber recibido compensación alguna, *"pero ahora* ha convenido con su hijo asignarle una compensación por lo menos de $1,000 anuales,

aunque sus servicios valen más y en su consecuencia reconoce que adeuda a su hijo la suma de quince mil dólares ($15,000)." (Bastardillas nuestras.)

Expuso. además, que durante otros cinco años le administró otros bienes, por lo cual cree y conviene que una compensación de $400 anuales es justa y reconoció adeudarle $2,000 en adición a los $15,000 antes mencionados. Por último, en satisfacción de los $17,000 que manifiesta don Doroteo Estévez Gimeno adeuda a su hijo, le adjudicó las fincas descritas.

Presentada la escritura en el Registro de la Propiedad, el Registrador denegó la inscripción y tomó anotación preventiva por el fundamento de que el llamado "Contrato de Dación en Pago" que se describe en la escritura no es otra cosa que una donación remuneratoria, en relación con la cual no se ha acreditado el pago de la contribución prescrita por la Ley núm. 303 de 12 de abril de 1946 ((1) pág. 783).

■ Es lugar común en Derecho que el nombre no hace la cosa. En la escritura que nos ocupa, el notario tuvo a bien denominar la transacción "Dación en Pago," pero de la escritura surge que al prestar el hijo los servicios, no se pactó compensación alguna, ni hubo la intención de cobrarlos. Fué en el acto de otorgarse la escritura donde por primera vez Doroteo Estévez Gimeno se dispuso a asignarle una compensación por los servicios anteriormente prestados. Hasta ese momento la deuda no era exigible y no siéndolo, su acto de liberalidad constituía la donación remuneratoria definida en el artículo 560 del Código Civil.(1) Porque, como dice Manresa, para que haya donación precisa que no exista obligación previa, es decir, que el precio del servicio que se pretende remunerar no sea exigible al donante con anterioridad

---

(1) Artículo 560 del Código Civil:

"Las donaciones entre vivos pueden ser de tres clases:

"1.    *      *      *      *      *

"2.    *      *      *      *      *

"3. La donación remuneratoria, o la que se hace a una persona por sus méritos o por los servicios prestados al donante, siempre que no constituyan deudas exigibles."

al acto de la donación. 5 Manresa, Código Civil, (3ra. ed. 1910) pág. 71. De otro modo, al que quisiera ocultar una donación tras la máscara de una dación en pago, fácil le sería reconocer la exigibilidad de una obligación que antes no era exigible y en el mismo acto dar una cosa en pago de ella. Tal solución, no sólo violaría el artículo 560 del Código Civil, sí que también estaría en conflicto con la letra clara de aquella parte de la sección 1(a) de la Ley núm. 303 de 1946 que dice: "La donación será tal tanto cuando se hace en forma directa como indirecta."

Ejemplificando lo que no constituye la deuda exigible, a que se refiere el artículo 619 del Código Civil Español, equivalente al 560 del nuestro, dice Manresa:

". . . Una persona administra gratuitamente los bienes de un amigo enfermo o un tutor los de un menor o incapacitado, sacrificando su vida al cuidado de esos bienes o al cumplimiento de lo que creen su deber, y obtienen después una recompensa más o menos importante, pero merecida. Esta recompensa, ¿es donación? . . . . Si atendemos al que la da, como lo hace Troplong, y como creemos que quiere expresar el art. 619, hay donación, porque el donante no puede ser legalmente compelido a pagar esos servicios." 5 Manresa (3ra. ed. 1910) pág. 72.

■ La facultad de calificar los documentos sujetos a inscripción ha sido reservada exclusivamente al Registrador.([2]) Resultando de la escritura que la transacción es una donación remuneratoria inter vivos, no venía el Registrador obligado por la denominación que le diera el notario.

■■ Establecido que la transacción contenida en la escritura es una donación remuneratoria inter vivos, ¿estuvo justificado el Registrador en denegar la inscripción por no acompañarse el recibo acreditativo de haberse pagado la contribución impuesta por la citada Ley?

---

[2] Artículo 18 de la Ley Hipotecaria:

"Los Registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.

"* * * * * * "

Desde el principio hemos enfatizado el hecho de que nos confrontamos en el presente caso con una donación inter vivos. La razón que hemos tenido para ello consiste sencillamente en que esta donación, efectiva en vida del donante, si bien está sujeta a contribución por la Ley núm. 303 de 1946, sin embargo, el procedimiento para su cobro es distinto del provisto por la misma Ley para el cobro de la contribución de herencia. El procedimiento para el cobro de la contribución impuesta a esta clase de donaciones se rige por las secciones 7 y 8 de la Ley. En contraste con el artículo 5, que se aplica a los bienes trasmitidos por herencia, la sección 7(a) de la Ley núm. 303 impone a todo donante en exceso de $1,000—siempre que la donación sea inter vivos—(³) la obligación de rendir una planilla al Tesorero dentro de los diez días siguientes a la donación, haciendo constar el montante neto de la misma, la edad del donante, el nombre y dirección del donatario y cualquier otra información que el Tesorero requiera. Prescribe, además, dicha sección, que todo donante que hiciere durante cualquier año natural donaciones montantes a más de $5,000, rendirá una planilla en o antes del 1ro. de febrero del año natural siguiente, haciendo constar en detalle el montante o valor de cada donación, la fecha en que se hiciera la misma, el nombre, dirección y edad de la persona a quien se hiciera cada donación y cualquier otra información que el Tesorero requiera. Y la sección 7(b) impone al donatario igual obligación de rendir una planilla similar en o antes del 1ro. de febrero del año natural siguiente a la donación. Por último, prescribe la sección 8(b) que ''en el caso de donaciones *distintas a las hechas a no-residentes y a las efectivas al fallecimiento,* la contribución vencerá y será pagadera en o antes del 1 de febrero del año siguiente al año en que la donación se hiciera . . . '' (Bastardillas nuestras.)

Por otro lado, el procedimiento para el cobro de la contribución de herencia, en la cual está incluída la impuesta a las

(³) La sección excluye expresamente las donaciones hechas por testamento u otra disposición efectiva al fallecimiento.

donaciones *mortis causa,* por ser éstas cargas de la herencia al igual que los legados, se rige por el art. 5 y siguientes de la Ley núm. 99 de 1925 (pág. 791), enmendados por e incorporados en la Ley núm. 303 de 1946.

Es el artículo 12 de la Ley núm. 99 de 1925, según quedó enmendado por la Ley núm. 303 de 1946, que forma parte de los que rigen el cobro de la contribución de herencia propiamente dicha, el que contiene la disposición que trató de aplicar el Registrador, a saber:

"Excepto en los casos especiales, según se determina en el artículo 5A.(⁴) de esta Ley, ningún tribunal aprobará la división o distribución de los bienes de ningún fallecido, ni permitirá la liquidación final de las cuentas de ningún albacea, administrador, fideicomisario o persona que administre cualesquiera bienes a menos de haberse presentado y exhiban el recibo o los artículos especiales, según lo dispuesto en el artículo 11 de esta Ley; . . . y ningún registrador inscribirá . . . instrumento alguno . . . en relación con la división, distribución o entrega de dichos bienes a menos de haberse presentado el recibo o recibos expedidos por el Tesorero; . . . . "

A poco que reflexionemos sobre el significado del párrafo que acabamos de transcribir, advertiremos que se refiere exclusivamente a la contribución impuesta sobre bienes trasmitidos por herencia y no a las donaciones inter vivos, las cuales surten todos sus efectos en vida del donante. Y como ni esta Ley, ni ninguna otra, contiene disposición alguna al efecto de exigir, como requisito previo a la inscripción de una donación inter vivos, que se acredite el pago de dicha contribución,

---

(⁴) Artículo 5A:

"En el caso de que los herederos, mandatarios y legatarios carecieran de dinero en efectivo para pagar contribuciones sobre la propiedad de propiedades trasmitidas en herencia y para pagar la contribución de herencia impuesta por esta Ley, el Tesorero de Puerto Rico queda autorizado para consentir al albacea, administrador o fideicomisario que previo el trámite legal correspondiente venda o grave con garantía hipotecaria o en cualquier otra forma, la parte de los bienes relictos que fueren necesariamente indispensables a fin de allegar fondos suficientes para el pago de las referidas contribuciones y el registrador de la propiedad queda autorizado, en estos casos, a inscribir los documentos que al efecto se otorguen."

erró el Registrador al denegar la inscripción de la escritura que nos ocupa por el supuesto incumplimiento de un requisito no exigido por la ley.

*Procede revocar la nota recurrida y ordenar la inscripción del documento libre de defectos.*