LA SOCIEDAD NIDO & CÍA., S. EN C., recurrente, *v.* EL REGIS-
TRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Número 1294.

*Sometido:* 1 de abril de 1953. *Resuelto:* 24 de abril de 1953.

790

*Luis Domínguez Rovira* y *C. Domínguez Rubio,* abogados de la peticionaria; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

De los documentos que tuvo ante sí el Registrador de la Propiedad Interino del Distrito de Guayama surgen los siguientes hechos:

En el año 1913 se constituyó una sociedad mercantil en comandita, bajo la razón social de "Nido y Compañía, Sociedad en Comandita", compuesta de un socio gestor y dos socios comanditarios. Se dispuso un término de duración de seis años. Posteriormente se otorgaron escrituras de prórrogas de esa sociedad, por términos específicos de duración y con determinados cambios en cuanto a la identidad de los socios y las participaciones correspondientes. El 28 de septiembre de 1929 se modificó esa sociedad, acordándose el ingreso de los nuevos socios Pedro, María Adela, Tomás Isaías, Angeles Alvilda, José Ramón Estanislao y Alberto Angel de Nido, conjuntamente con los anteriores socios doña Alvilda de Nido y Monserrat, viuda de Nido y don Rafael de Nido, siendo todos socios comanditarios, con excepción de Rafael y Pedro de Nido, quienes asumieron el carácter de socios gestores administradores. Se estableció una prórroga por el término de cuatro años, a terminar el 30 de junio de 1933. El 29 de junio de 1933, previa una autorización judicial (habiendo socios menores de edad) se prorrogó la sociedad por 30 días. Posteriormente todos los socios otorgaron una nueva escritura prorrogando la sociedad por cuatro años adicionales, a

terminar el 31 de agosto de 1937, retirándose Rafael de Nido como socio gestor aunque continuando como socio comanditario y quedando Pedro de Nido como único socio gestor, indicándose que él continuaría como tal "con plenitud de poderes, sin limitación alguna, para representarla". El 23 de agosto de 1952 se presentó en el Registro de la Propiedad de Guayama una escritura de compra–venta de una finca urbana perteneciente a la sociedad ya mencionada e inscrita en el Registro como tal, compareciendo Pedro Nido "en su condición de único gestor y además como liquidador" de la sociedad, vendiendo esa propiedad a José Rovira Sánchez y Eduardo Rovira Sánchez, y a sus esposas. En esa escritura se indica lo siguiente:

"Comparece dicho señor Nido en su condición de único gestor y además como liquidador de la Sociedad Civil, Agrícola e Industrial, domiciliada en Arroyo, Puerto Rico, denominada 'Nido y Compañía, Sociedad en Comandita', cuyo carácter de gestor ostenta dicho compareciente de acuerdo con la escritura número setenta y cinco (75) sobre Prórroga y Modificación de dicha sociedad otorgada en Guayama con fecha veinte y nueve (29) de agosto de mil novecientos treinta y tres (1933) ante el notario que fué de dicha ciudad don Tomás Bernardini de la Huerta; asegurando dicho compareciente que las operaciones de la sociedad antes indicada fueron posteriormente prorrogadas por un término adicional de cuatro (4) años mediante la escritura número sesenta y uno (61) otorgada también ante el propio mencionado notario don Tomás Bernardini de la Huerta con fecha veinte y cuatro (24) de agosto de mil novecientos treinta y siete (1937) para vencer dicha prórroga el día treinta y uno (31) de agosto de mil novecientos cuarenta y uno (1941) y posteriormente vuelta a prorrogar según lo acreditará cuantas veces fuere necesario o requerido para ello dicho compareciente."

A esa escritura de compraventa presentada en el Registro no se acompañó la escritura núm. 61 de 24 de agosto de 1937 que, según el compareciente, efectuaba una prórroga de la sociedad hasta el 31 de agosto de 1941. Tampoco se acompañó documento otro alguno en que directamente se esta-

bleciesen prórrogas posteriores. Sin embargo, se acompañó una escritura de Ratificación, de 13 de octubre de 1948, otorgada por todos los socios que, según la escritura núm. 75 de 29 de agosto de 1933, integraban la sociedad. En esa escritura de Ratificación los comparecientes hicieron constar que concurrían en su carácter de "únicos socios que son de la sociedad civil, agrícola e industrial 'Nido y Compañía, Sociedad en Comandita', siendo el compareciente don Pedro de Nido y Nido el único socio gestor, y los demás, socios comanditarios," resultando tal carácter de las escrituras números 107 de 28 de septiembre de 1929, 75 de 29 de agosto de 1933 y 61 de 24 de agosto de 1937. Se hace también constar en la escritura de Ratificación que en virtud de las prórrogas establecidas en esas escrituras se convino por los socios continuar, y de hecho se continuaron, las gestiones sociales, y se sigue diciendo lo siguiente, en dicha escritura de Ratificación:

"*TERCERO:* Que por acuerdo privado de los socios, vaciado en el Libro de Actas de la Sociedad, y celebrado el veintiocho de agosto de mil novecientos cuarenta y uno, éstos acordaron prorrogar nuevamente la Sociedad, bajo los mismos términos y condiciones ya expresados, hasta el treinta de junio de mil novecientos cuarenta y dos, y que allá para el día veintiocho de junio de mil novecientos cuarenta y dos los socios comparecientes acordaron nuevamente prorrogar bajo las mismas bases ya mencionadas, y como cuestión de hecho prorrogaron, la vida de la Sociedad civil 'Nido y Compañía, Sociedad en Comandita', por término indefinido y hasta su completa liquidación mediante la venta de sus propiedades muebles e inmuebles, facultándose, como se facultó, al único socio gestor, don Pedro de Nido y Nido, para que a su sola y absoluta discreción continuara administrando y dirigiendo los negocios de la Sociedad hasta el momento en que él creyese oportuno y conveniente vender total o parcialmente los bienes de la Sociedad.

"*CUARTO:* Que conforme a las prórrogas así convenidas privadamente entre los socios en las fechas antes mencionadas, las cuales prórrogas aquí y ahora se ratifican, el gestor don Pedro Nido continuó administrando y dirigiendo los destinos de la Sociedad hasta esta fecha, habiendo otorgado en su tal carácter de socio gestor, con plenos poderes, varios documentos y escri-

turas las cuales se especificarán más adelante, enajenando bienes muebles e inmuebles de la Sociedad.

"*QUINTO:* Que con motivo del traslado de las oficinas de la Sociedad y la venta reciente de gran parte de sus bienes, se ha extraviado el Libro de Actas de la misma, haciéndose por lo tanto imposible copiarlas literalmente en esta escritura, y a los efectos de evidenciar fehacientemente, y de ratificar, aprobar y adoptar como propios los actos del socio gestor don Pedro Nido relacionados con la venta y subarrendamiento de bienes muebles e inmuebles de la Sociedad, los comparecientes en sus respectivos caracteres de únicos socios de la Sociedad civil, agrícola e industrial 'Nido y Compañía, Sociedad en Comandita', asistidos de sus respectivos cónyuges, así lo llevan a efecto bajo las siguientes

## CLAUSULAS:

"Primera: Los comparecientes socios, doña Alvilda de Nido y Monserrat Viuda de Nido, y los otros siete socios todos de apellido Nido y Nido, por la presente reafirman y ratifican los acuerdos privados sobre prórroga de Sociedad a que ya se ha hecho referencia y expresamente confirman los referidos acuerdos y prórrogas en la forma expresada, afirmando, además, que de hecho, la Sociedad civil, agrícola e industrial, 'Nido y Compañía, Sociedad en Comandita', ha continuado y continúa funcionando de acuerdo con las referidas prórrogas y las bases en ellas estipuladas.

"Segunda: Los socios comparecientes asimismo confirman y ratifican los poderes conferidos al socio gestor don Pedro de Nido y Nido para que a nombre de la Sociedad venda los bienes muebles e inmuebles de la misma, al precio y bajo las condiciones que él, a su sola y entera discreción, crea convenientes a los mejores intereses de la Sociedad y de sus socios, dejando establecido a través de esta escritura que dichos poderes siguen en todo su vigor y que los mismos no han sido en forma alguna limitados, modificados o revocados.

"Tercera: Los socios comparecientes por la presente ratifican en todas sus partes, entre otras, las escrituras números cincuenta y seis (56), cincuenta y siete (57) y cincuenta y ocho (58) otorgadas en Guayama, Puerto Rico, ante el notario público don Tomás Bernardini Palés el día nueve de junio de mil novecientos cuarenta y ocho, a favor de don Rafael Velázquez Grillo, por don Pedro de Nido y Nido en su carácter de socio gestor de la Sociedad civil, agrícola e industrial, 'Nido y Compa-

ñía, Sociedad en Comandita', tal y cual si las mismas hubiesen sido otorgadas individualmente por cada uno de los comparecientes, retrotrayendo el efecto de esta ratificación a la fecha de dichas escrituras.

"Cuarta: Los socios comparecientes por la presente facultan al socio gestor don Pedro de Nido y Nido para que a nombre de la Sociedad 'Nido y Compañía, Sociedad en Comandita', y de los socios comparecientes venda, ceda y traspase, al precio y bajo las condiciones que él, a su sola discreción y exclusivo criterio, considere convenientes a los mejores intereses de la Sociedad, todos los restantes bienes muebles e inmuebles de la Sociedad hasta que éstos hayan sido totalmente enajenados, obligándose dicho socio gestor a rendir a los demás socios informes periódicos de estas ventas y a informarles tan pronto se haya dispuesto de la totalidad de los bienes sociales a fin de proceder a la liquidación final y disolución de la Sociedad.

"Quinta: El socio gestor don Pedro Nido hace constar que con las ventas ya realizadas y los subarrendamientos acordados, tan sólo le quedan a la Sociedad dos parcelas propias de terreno, o sea, una parcela de aproximadamente una cuerda con mil ochenta y cinco diezmilésimas de otra (1.1085) donde ubican las casas residenciales y la oficina de la Sociedad, parcela cuya venta ya ha sido acordada con los hermanos Miguel, José y Eduardo Rovira Sánchez, del pueblo de Arroyo, y otra parcela de aproximadamente cinco cuerdas, sita al lado del Hospital Municipal del mismo pueblo y colindante con la Calle Morse, antes sembrada de caña y hoy sin sembrar. Los socios comparecientes confirman su autorización específica al gestor don Pedro Nido para que proceda a ultimar la venta de la parcela a favor de los hermanos Rovira Sánchez, otorgando la escritura correspondiente, y asimismo a vender la otra parcela bajo las condiciones y términos que él, a su sola discreción y exclusivo criterio, considere convenientes a los mejores intereses de la sociedad civil, agrícola e industrial, 'Nido y Compañía, Sociedad en Comandita', y de sus socios."

El Registrador Interino de Guayama denegó la inscripción de la escritura de compraventa ya mencionada (de 27 de noviembre de 1948) en que, como ya hemos indicado, se vendió una finca urbana a José y a Eduardo Rovira Sánchez, y a sus esposas. La nota denegatoria del Registrador fué la siguiente:

"DENEGADO el presente documento, con vista de otros, donde indica la nota puesta al margen de la descripción de cada una de las fincas, por las siguientes consideraciones: *Primera:* Que los hechos o actos inscribibles que se especifiquen como ocurridos, en una escritura, sólo constituirán prueba plena cuando los mismos fueren concertados ante el propio notario autorizante, quien dará fe de su existencia mediante la fórmula 'Ante mí'; por el contrario aquellos otros sucedidos con anterioridad, pero sin la asistencia notarial, aunque se hicieren constar en la escritura, carecen de valor jurídico para obligar a terceras personas, salvo el que pudieran tener para los asistentes al acto; *Segunda:* Sentado el anterior precedente y ateniéndonos a la documentación que se acompaña a la escritura de ratificación mencionada, luego de la prórroga y modificación que aparece de la escritura de veinte y nueve de agosto de mil novecientos treinta y tres, ante el Notario don Tomás Bernardini de la Huerta, admitiendo que la sociedad civil agrícola e industrial 'Nido & Compañía, S. en C.' fijando su duración hasta el veinte y nueve de agosto de mil novecientos treinta y siete, nada se aporta con el carácter de evidente a este Registro que pueda servir de base a la inscripción solicitada, ateniéndonos a lo que se dice en su cláusula primera, por cuanto los acuerdos privados estipulados entre aquellos socios comparecientes, y que se afirma fueron vaciados en el Libro de Actas de la sociedad, carecen de valor probatorio auténtico para poder ser inscritos, ya que el tal libro no aparece por parte alguna, como tampoco se acompaña la escritura número sesenta y cinco, otorgada el veinte y cuatro de agosto de mil novecientos treinta y siete, con la prórroga de cuatro años más ante el Notario don Tomás Bernardini de la Huerta, lo que hace que aquellos actos o acuerdos privados, tengan ante nuestra opinión el carácter de dudosos, y de existencia no evidente, como requiere la Ley Hipotecaria. *Tercera:* No existiendo constancia en la documentación presentada, ni la suficiente evidencia para dar por cierto que la sociedad 'Nido & Compañía, S. en C.' fuera prorrogada y modificada después del día veinte y nueve de agosto de mil novecientos treinta y siete, robustece nuestra opinión de que dicha entidad tuvo completo finiquito al expirar el anterior plazo, o quizás y, todo lo más, al aceptar el acuerdo de la escritura número sesenta y cinco, de veinte y cuatro de agosto de mil novecientos treinta y siete, de que se hace indicación, nada más, de la prórroga que en ella se acuerda hasta el mismo día, mes y año, de mil novecientos cuarenta y uno, por

lo que, se hace preciso, teniendo además en cuenta el tiempo transcurrido, que la referida sociedad 'Nido y Compañía, S. en C.' quedó completamente extinguida, sin personalidad jurídica alguna, de acuerdo con lo dispuesto por el artículo ciento cuarenta y dos del Código de Comercio en relación con los mil quinientos noventa y tres y mil quinientos noventa y cuatro del propio cuerpo legal (sic) que precisa la celebración de un nuevo contrato social y su inscripción en el Registro Mercantil con carácter obligatorio, nada de lo cual ha sido verificado; *Cuarta:* Ateniéndonos al contexto de la escritura número seis, de octubre de mil novecientos cuarenta y ocho, advertimos que en su cláusula segunda, se hace constar otro pacto, confiriendo al antiguo gestor Don Pedro Nido, una autorización de venta de bienes muebles e inmuebles de la extinguida sociedad, de donde se deduce que aquellos otorgantes obraron por cuenta propia sin atenerse a las cláusulas de la antigua entidad originaria, lo que resulta en palmaria, antinomia con las prórrogas que dicen particularmente otorgaron, contradicción y ambigüedad que no pueden admitirse en las normas hipotecarias. *Quinta:* A mayor abundamiento, se desprende de la ya citada escritura número seis, otorgada ante el Notario Sr. Canales, que en su cláusula tercera se mencionan las escrituras cincuenta y seis, cincuenta y siete y cincuenta y ocho, celebradas ante el Notario de Guayama, don Tomás Bernardini Palés, el diecinueve (sic) de junio de mil novecientos cuarenta y ocho, en donde los socios actuando con carácter individual e independiente, refiriéndose a las dichas escrituras 'tal y cual si las mismas hubiesen sido otorgadas individualmente', como textualmente se reconoce, ratificaron los actos llevados a cabo por el gestor D. Pedro de Nido, sobre la venta de otra propiedad que se había llevado a efecto; lo que demuestra que aquella entidad 'Nido y Compañía, S. en C.' se tuvo por extinguida por sus propios miembros asumiendo así actualmente, una posición contradictoria con los fines de prorrogar aquella extinguida sociedad como se pretende en la cláusula segunda de aquella mencionada escritura número seis: deduciéndose igualmente del otorgamiento de las mencionadas escrituras que la personalidad del antiguo gestor D. Pedro de Nido, con posterioridad a las mismas ha perdido totalmente aquel carácter de liquidador de la ya extinguida sociedad con que quiere intervenir en la actualidad. *Sexta:* Teniéndose en cuenta, además, que no acreditándose de modo fehaciente que aquella entidad mercantil fuera prorrogada antes de expirar

el plazo social, o después de vencido el mismo, se hace imposible lograr la certidumbre de si se trata de la misma sociedad prorrogada o de otra diferente continuadora de la primera a fin de aplicar, de acuerdo a cada una de esas situaciones, lo dispuesto en el artículo veinte de la Ley Hipotecaria en relación con los artículos mil quinientos noventa y cuatro del Código Civil y el ciento cuarenta y dos del de Comercio, interpretación que entendemos se ajustó a la decisión emitida por el Honorable Tribunal Supremo de Puerto Rico en el caso de Gandía versus Registrador, 31 D.P.R. 78; y tomada en su lugar anotación preventiva por el término legal de 120 días a favor de los compradores. Dichas fincas, por su procedencia, se hallan afectas a dos embargos a favor de El Pueblo de Puerto Rico, para responder de contribuciones sobre ingresos. Guayama, a once de octubre de mil novecientos cincuenta y dos."

Contra esa nota denegatoria han interpuesto un recurso gubernativo ante este Tribunal, la llamada sociedad Nido y Compañía, S. en C., y los hermanos José y Eduardo Rovira Sánchez. En su esencia, la nota denegatoria del Registrador se basó en los siguientes términos:

(1) Que de los documentos sometidos al Registro surgía que la sociedad en cuestión había quedado disuelta con anterioridad a la escritura de compraventa.

(2) Que no se había demostrado al Registrador, en forma legalmente suficiente, que esa sociedad hubiese sido prorrogada con posterioridad al 31 de agosto de 1937.

(3) Que no se había demostrado al Registrador, en forma legalmente suficiente, que Pedro Nido estuviese debidamente capacitado para actuar en nombre de la sociedad y que, por lo tanto, estando las fincas inscritas en nombre de la sociedad, no procedía la inscripción de la compraventa.

Por su parte, los recurrentes sostienen que el Registrador debe aceptar como ciertas las aseveraciones hechas por los socios en la escritura de ratificación en cuanto a las prórrogas hechas; que los documentos demostraban que Pedro Nido tenía capacidad suficiente para actuar en nombre de la sociedad, ya fuera como socio gestor o como liquidador y que, de todos modos, todos los socios habían ratificado la

capacidad y las actuaciones de Pedro Nido, habiendo sido ratificada específicamente la escritura de compraventa en cuestión.

El primer problema planteado ante nos se refiere a la extensión y límites del poder de calificación de un Registrador. Debemos observar, en el umbral de la discusión, que, desde el punto de vista del Derecho Comparado, existen, en distintos países, tres sistemas de calificación, uno, el más limitado, en que el Registrador meramente transcribe y anota mecánicamente todos los documentos que se le presenten, sin que su actuación afecte la validez o eficacia de los derechos inscritos y sin que él pueda fiscalizar la suficiencia legal de esos documentos; el segundo, que le concede al Registrador poderes absolutos para decretar la validez o invalidez de los derechos a inscribirse, en tal forma que los derechos nacen con la inscripción, la cual determina definitivamente la existencia y efectividad de los derechos, y el tercer sistema, que es el nuestro y que es ecléctico y relativo, ya que el Registrador no es un autómata o archivero desprovisto de poderes, pero tampoco es un juez o monarca judicial que resuelva definitivamente los derechos de las personas interesadas. 2 Morell, Legislación Hipotecaria, 230 et seq; 1 Barrachina, Derecho Hipotecario y Notarial, 199; Muñoz Morales, Lecciones de Derecho Hipotecario, Tomo I, página 105. Bajo nuestro sistema, el Registrador no declara ni determina derechos dudosos o controvertidos, pero sí proclama, una vez examinadas las pruebas documentales, que se ha establecido en el Registro un derecho real o situación jurídica inmobiliaria, autenticando esta afirmación en los libros registrales, aunque sus determinaciones están sujetas a juicio contradictorio en un tribunal sobre el mismo objeto. 2 Roca Sastre, Derecho Inmobiliario, 11 y 12.

El poder de calificación del Registrador está señalado en el artículo 18 de nuestra Ley Hipotecaria, que dis-

pone, en parte, que los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.(¹) El artículo 78 del Reglamento para la Ejecución de la Ley Hipotecaria dispone, en parte, que la calificación que haga el registrador de acuerdo con el artículo 18 de la ley se entenderá limitada para el efecto de negar, suspender o admitir la inscripción, y no impedirá ni prejuzgará el juicio que pueda seguirse en los tribunales sobre la nulidad de la misma escritura, o la competencia del mismo juez o tribunal.

Bajo los artículos citados, un Registrador no tiene facultad para determinar si las constancias contenidas en una escritura se ajustan o no a la verdad. *Noguera* v. *Registrador*, 72 D.P.R. 195, 199. Pero esas constancias o aseveraciones no son legalmente suficientes si ante el Registrador surge que no se ha cumplido con la ley. *Cf. Polanco* v. *Registrador*, 70 D.P.R. 745. En el propio caso de *Noguera* v. *Registrador*, supra, se confirmó la denegación de una inscripción por no haberse acreditado el pago de la contribución de herencia o la exención correspondiente, indicándose en la opinión que no debe permitirse una inscripción si con ella se autoriza la violación de requisitos imperativos de la ley. No sólo es una facultad, sino que también es una obligación que se impone al Registrador de actuar en tal forma que sólo figuren en el Registro los actos que sean válidos con arreglo a derecho, no teniendo el Registrador discreción alguna en cuanto a eximir de las obligaciones impuestas por la ley o los reglamentos. *Autoridad Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 25, 31; *Alicea* v. *Registrador*, 71 D.P.R. 592, 597;

---

(¹) Nuestro artículo 18 es más amplio que el correspondiente de la Ley Hipotecaria de España, el cual determina que los Registradores calificarán la legalidad de las formas extrínsecas de los documentos así como la capacidad de los otorgantes y la validez de los actos dispositivos contenidos en las escrituras públicas. Véase, Muñoz Morales, Lecciones de Derecho Hipotecario, Tomo 1, página 106.

*Mari* v. *Registrador*, 72 D.P.R. 888, 890; *Rivera* v. *Registrador*, 64 D.P.R. 461, 466; *Ramos* v. *Registrador*, 69 D.P.R. 708. ([2])

En Barrachina, ob. cit., se dice lo siguiente, en las páginas 203 y 204:

"Para desvanecer toda duda, producto de criterios tan opuestos, y para que la resolución de 12 de Noviembre de 1874 tuviese mayor firmeza, vino la citada Orden de dichos mes y año, dada con audiencia del Consejo de Estado, declarando la competencia de los Registradores para calificar las llamadas formas intrínsecas; y *aquí fincó el pleito.*

"De este sentir participamos. En el Registro no deben inscribirse actos ni contratos nulos, sino todos los que tengan aspecto de legalidad; si aquéllos se inscribieran, el dominio no tendría certidumbre, el crédito territorial carecería de garantías; crearíase una intranquilidad en la posesión y goce de los derechos; a la buena fe le faltaría asiento, y ello nos haría retrogradar, sin tener valor el tiempo y el progreso, al régimen antiguo, condenado por la ciencia y la opinión.

"Si ahora que se tiende a la substantividad de la inscripción como fórmula amparadora del derecho inmobiliario, se permitiera inscribir pactos y contratos nulos, sin veto por parte del Estado, administrando éste la justicia preventiva, la ley Hipotecaria, ese monumento jurídico que tanto nos enorgullece, lo veríamos falseado por su base, cuarteados sus sillares y sin el objeto trascendental para que fué levantado.

---

([2]) La línea de demarcación es clara en cuanto a la calificación de resoluciones judiciales. El Registrador no puede examinar los fundamentos en que se han basado tales resoluciones (*Iglesia Católica, etc.* v. *Registrador*, 61 D.P.R. 246), ni la justicia intrínseca de las resoluciones (*Banco Comercial de P. R.* v. *El Registrador*, 24 D.P.R. 710), ni la suficiencia ni apreciación que de la prueba ha hecho un tribunal (*Fernández* v. *El Registrador de la Propiedad*, 17 D.P.R. 1061; *Wilcox* v. *Registrador*, 67 D. P. R. 475, 484), pero el Registrador puede denegar la inscripción cuando surge que el tribunal no tenía jurisdicción o competencia o que no se han cumplido con los requisitos de ley que sean condiciones precedentes para poder dictar la resolución, o que no se han observado los trámites y preceptos esenciales para su validez, o que no se ha seguido el procedimiento marcado en la ley que sea necesario para su validez o si la resolución no contiene todas las circunstancias que sean necesarias para su inscripción según la Ley Hipotecaria. *Sucesión Trías* v. *Registrador*, 59 D.P.R. 460; *Lebrón* v. *Registrador*, 63 D.P.R. 359, 370; *Herrero* v. *Registrador*, 63 D.P.R. 709; *Pirela* v. *Registrador*, 65 D.P.R. 955; *Carbonell* v. *Registrador*, 40 D.P.R. 533.

"Y es—aquí estriba la dificultad del problema—que para insignes jurisconsultos, al título y sólo al título debe atenerse en la calificación de la validez o nulidad del acto jurídico, crítica que solamente puede y debe hacerla el funcionario que lo autoriza, no el Registrador.

"Esto es un error, porque semejante calificación sólo alcanza a las partes que otorgan el acto o contrato y a los que de ellas traen causa, pero no a los extraños al hecho jurídico; y como en el Registro debe reflejarse legal y fielmente el derecho inscrito, así como aquél sobre el cual descansa, ambos en toda su extensión y modalidades, no hay otro medio de garantir los intereses del tercero, para el cual se ha creado el Registro, que impedir a todo trance la inscripción de lo que pugne con la ley, única manera de que no aparezcan de los asientos circunstancias de invalidación que perjudiquen, y hagan que se llame a engaño el adquiriente de buena fe, no siempre versado en el Derecho.

"El art. 18 de la ley al hablar de las escrituras, por lo que respecta a la validez de las obligaciones, emplea la palabra *obligación* en un sentido amplio, bajo el cual se comprenden los pactos y contratos como decía R. O. de 12 de noviembre de 1870, restauradora del buen criterio en la materia."

La facultad que tiene el Registrador para exigir que se cumpla con los requisitos de la Ley Hipotecaria y del derecho positivo antes de que se verifique una inscripción tiene especial significación cuando de los documentos presentados y de los asientos del Registro no surge la capacidad ni el poder representacional del otorgante. Tal como se resuelve en *Rivera* v. *El Registrador*, 17 D.P.R. 323, 324, de acuerdo con el citado artículo 18 el Registrador tiene el deber de calificar la capacidad de los otorgantes por lo que resulte de la escritura que para su inscripción se le presente y de los asientos en el Registro, pero ello significa que él no puede usar datos extraños a la escritura o a los asientos registrales, pero ello no implica que en todo caso el Registrador haya de tener por probado la capacidad de los otorgantes, sólo porque el notario la afirme, ya que tal afirmación debe ser congruente con la ley y con los asientos en el Registro en cuanto a la misma finca. Cf. *Graciani* v. *El Registrador*, 25 D.P.R. 44;

*Colón* v. *El Registrador de Arecibo*, 22 D.P.R. 546; *Sucesión Ramírez* v. *El Registrador de la Propiedad*, 16 D. P. R. 314; *Infanzón & Rodríguez* v. *El Registrador*, 24 D.P.R. 141. Especialmente, no bastan las afirmaciones contenidas en una escritura en cuanto a las circunstancias que revisten al otorgante de facultades para obrar en nombre ajeno y obligar a terceras personas. *Autoridad de Tierras* v. *Registrador*, 62 D.P.R. 506, 509. En ese caso el Registrador puede exigir prueba o documentos complementarios que se ajusten a la ley, (*Sucesores de L. Villamil & Co.* v. *El Registrador*, 16 D.P.R. 759, en que se resolvió que era necesario el que se presentase al Registrador, en cuanto a una escritura de disolución de sociedad, el poder especial otorgado por un socio en favor de un mandatario). Véanse, además, *Colón* v. *El Registrador de Arecibo*, supra; *Ruiz* v. *Torres*, 61 D.P.R. 1. En *Estévez* v. *Registrador*, 67 D.P.R. 361, se indica que al calificar un documento, el Registrador no viene obligado por la denominación que el notario autorizante dé a la transacción envuelta en el documento en cuestión.

■ Aplicando estos conceptos generales al caso de autos, de las escrituras sometidas al Registrador surgió, como hemos visto, que en la escritura núm. 75, otorgada ante el notario Tomás Bernardini de la Huerta el día 29 de agosto de 1933, se modificó y prorrogó la sociedad ya mencionada hasta el 31 de agosto de 1937. En la escritura de Ratificación ya citada, los socios hacen constar que en la escritura núm. 61, ante el mismo notario, de 29 de agosto de 1937, se prorrogó nuevamente la sociedad hasta el día 31 de agosto de 1941, y que por acuerdos privados de los socios, vaciadas en el Libro de Actas que, según los socios, se ha perdido, la sociedad fué prorrogada posteriormente. No se acompañó a la escritura de compraventa en cuestión la escritura núm. 61. Ahora bien, desde el punto de vista de la alegada existencia de la sociedad, el Registrador no venía obligado a actuar a base de las aseveraciones de los socios en cuanto a la escri-

tura 61 y en cuanto a los acuerdos privados de prórrogas. La referencia a tal escritura y acuerdos no constituían prueba adecuada ante el Registrador que justificasen la inscripción. La propia escritura 61 debió haber sido presentada como documento complementario, especialmente a los fines de demostrar la continuada existencia de la sociedad y la alegada capacidad representacional de Pedro Nido, como socio gestor. En cuanto a esos extremos, la seguridad que conlleva una inscripción registral exigía la presentación de prueba más auténtica que la mera referencia colateral a documentos que debieron haber sido sometidos al Registrador, especialmente tratándose de alegadas prórrogas de una sociedad mercantil.

 En las escrituras se hace referencia a la sociedad como "una sociedad civil, agrícola e industrial", pero habiendo ella adoptado la modalidad comanditaria, debe ser considerada como una sociedad mercantil, a la cual le son aplicables las disposiciones del Código de Comercio. *Godreau* v. *Godreau & Compañía*, 64 D.P.R. 325. Tal como lo dispone el artículo 141 del Código de Comercio, las compañías mercantiles se disolverán totalmente por el cumplimiento del término prefijado en el contrato. El artículo 142 del mismo cuerpo legal determina que las compañías mercantiles no se entenderán prorrogadas por la voluntad tácita o presunta de los socios, después que se hubiere cumplido el término por el cual fueron constituídas; y si los socios quieren continuar en compañía celebrarán un nuevo contrato, sujeto a todas las formalidades prescritas para su establecimiento, según se previene en el artículo 98. El artículo 98 del mismo Código dispone lo siguiente:

"Artículo 98.—Inscripción de la constitución, pactos, etc., de las compañías.—Toda compañía de comercio, antes de dar principio a sus operaciones, deberá hacer constar su constitución, pactos y condiciones, en escritura pública que se presentará para su inscripción en el registro mercantil, conforme a lo dispuesto en el artículo 11.

"A las mismas formalidades quedarán sujetas, con arreglo a lo dispuesto en el artículo 18, las escrituras adicionales, que de cualquier manera modifiquen o alteren el contrato primitivo de la compañía.

"Los socios no podrán hacer pactos reservados, sino que todos deberán constar en la escritura social."

De los artículos citados surge que (1) la prórroga de una sociedad mercantil, como la del caso de autos, debe ser hecha por los socios en forma expresa, en una escritura pública y que (2) se prohibe a los socios el hacer pactos privados. Se podría alegar que el artículo 142 prohibe una prórroga tácita o presunta solamente si ella se intenta hacer después de haber vencido el término prefijado y que tal prohibición no es aplicable a una prórroga hecha antes del vencimiento del término. Sin embargo, de la totalidad de los artículos citados surge la necesidad de hacer un nuevo contrato, de acuerdo con el artículo 98, si los socios quieren continuar en compañía. De todos modos, aun asumiendo que una prórroga tácita, o que no se ajuste al artículo 98, sea efectiva entre los propios socios, ella no sería obligatoria para terceros, lo cual es lo relevante en cuanto al problema de inscripción en el Registro de la Propiedad de una enajenación verificada en nombre de la sociedad.

En el caso de *P. Gandía & Cía.* v. *El Registrador de San Juan*, 31 D.P.R. 78, no se formalizó escritura de prórroga de una sociedad mercantil, y los socios, no obstante, formaron una nueva sociedad por escritura pública, indicando que la vieja sociedad había continuado en sus operaciones. Se resolvió que no era inscribible una hipoteca sobre una finca inscrita a nombre de la vieja sociedad, por impedirlo el artículo 20 de la Ley Hipotecaria; y que la continuación en las operaciones de la primera sociedad no implicaba una prórroga, bajo los artículos del Código de Comercio que hemos citado. Se dijo lo siguiente en la opinión:

"Como resulta del párrafo inserto, el término de la anterior sociedad P. Gandía y Compañía venció el 31 de julio de 1921,

y de este modo quedó disuelta totalmente conforme al artículo 221 del Código de Comercio, que dice:

" 'Art. 221.—Las compañías, de cualquiera clase que sean, se disolverán totalmente por las causas que siguen:

" '1ª El cumplimiento del término prefijado en el contrato de sociedad, o la conclusión de la empresa que constituya· su objeto. . .'

"El hecho de que al vencimiento del término social los socios continuaran las operaciones mercantiles no implicaba que podía entenderse prorrogada la sociedad por la voluntad tácita de los socios después de cumplido dicho término social.

"No obstante, los recurrentes al formalizar la escritura de 29 de enero de 1922, parece que fué su propósito tratar de convalidar su situación, toda vez que la anterior sociedad había continuado sus operaciones, y así ellos creyeron que se dejaría establecida una solución de continuidad entre la nueva y anterior sociedad y considerar ambas sociedades como una misma. Pero a esto se opone terminantemente el artículo 223 del Código de Comercio que además de prohibir la prórroga de las compañías mercantiles por la voluntad tácita o presunta de los socios después que se hubiera cumplido el término por el cual fueron constituídas, dispone también: 'y si los socios quieren continuar en compañía, celebrarán un nuevo contrato, sujeto a todas las formalidades prescritas para su establecimiento, según se previene en el artículo 119'.

"Si como prescribe dicho artículo 223, que el nuevo contrato para su constitución debe estar sujeto a todas las formalidades que previene el 119, se hace necesario *a fortiori* llegar a la conclusión que se ha constituído una nueva sociedad y por nueva se ha de entender, distinta a la anterior, porque esta última había quedado enteramente disuelta por el vencimiento de su término, y, por tanto, tiene razón el registrador exigiendo la aplicación del artículo 20 de la Ley Hipotecaria."

En la Sentencia del Tribunal Supremo de España de 8 de julio de 1903 (96 J.C. 87), al interpretar disposiciones del Código de Comercio de España idénticas a las nuestras que hemos citado, se resolvió lo siguiente:

"La disolución de una compañía fundada en haber expirado el plazo de su duración, ha de aplicarse forzosamente cuando éste se cumple, sin que, consiguientemente, tenga virtud para

impedirlo, la cláusula que autoriza a los socios para continuar la compañía, si previamente no manifestó el que se ampara en ella su voluntad en tal sentido, ni otorgó la necesaria escritura de continuación social, y lejos de eso, adoptó en las operaciones la fórmula 'en liquidación', expresiva de que la entidad social se hallaba disuelta. . . Al cumplirse el término prefijado en el contrato de sociedad, si no se prorroga por un nuevo contrato, se entiende disuelta totalmente. El contrato de prórroga de una sociedad habrá de celebrarse antes de la fecha señalada como término de la sociedad, pues al llegar éste queda disuelta 'ipso facto' y para continuar en este caso los negocios, como tal sociedad, habría de celebrarse nuevo contrato con las formalidades prescritas para su establecimiento en el artículo 119 (98 nuestro) del "Código de Comercio." (Véase, además, la Sentencia de 3 de abril de 1902.)

En *San Miguel* v. *Registrador de la Propiedad*, 18 D.P.R. 515, se declaró que era inscribible una escritura de cancelación de hipoteca, inscrita dicha hipoteca a favor de una sociedad mercantil, aun cuando la escritura de cancelación se haya otorgado después de vencido el contrato social. Se dijo lo siguiente en la opinión:

"Presentada en el Registro de la Propiedad de San Juan, Sección 1ª, la escritura de que se deja hecho mérito con la de constitución y prórroga de la sociedad acreedora para la cancelación de ambas hipotecas, el registrador la denegó por medio de la siguiente nota:

" 'Denegada la cancelación solicitada con vista de las escrituras de constitución y de prórroga de la sociedad acreedora, porque el término por el cual se constituyó dicha Sociedad venció el día quince de septiembre de mil novecientos once y fué prorrogada por escritura de veinte y cinco del mismo mes, o sea con fecha posterior a su vencimiento en contravención al artículo 223 del Código de Comercio en armonía con el 119 del mismo, por lo cual dicha sociedad prorrogada no continúa la personalidad jurídica de la anterior; y se ha extendido anotación preventiva por cuatro meses al folio 17 vuelto, tomo 77 de esta ciudad, finca 1633 duplicado, anotación letra G. San Juan, abril 20 de 1912. José S. Belaval, Registrador.'

"Dicha nota ha sido recurrida por Don Jenaro San Miguel y es la materia del recurso que nos toca considerar y resolver.

"De la escritura de modificación y prórroga de contrato de sociedad mercantil otorgada en 25 de septiembre de 1911 resulta:

"1º Que por escritura pública de 7 de diciembre de 1907, inscrita en el registro mercantil, se constituyó la sociedad mercantil 'Sucesores de San Miguel Hermanos' por término de cuatro años, que empezarían a contarse desde el 15 de septiembre del año expresado, retrotrayéndose a esa fcha los efectos de tal documento;

"2º Que por la escritura pública de 25 de septiembre de 1911 también inscrita en el registro mercantil, fué modificado y prorrogado el contrato de sociedad mercantil constatado en la escritura de 7 de diciembre de 1907, por cuatro años más a contar desde el día diez del propio mes de septiembre en que así se había convenido, a cuya fecha debían retrotraerse todos los efectos de la modificación y prórroga de dicho contrato.

"Ante esos hechos hemos de aceptar que el término por el cual se constituyó la sociedad mercantil 'Sucesores de San Miguel Hermanos' vencía en 15 de septiembre de 1911, y que con fecha posterior a su vencimiento, o sea en 25 del propio septiembre se escrituró la prórroga de dicha sociedad, según había sido convenido desde el día diez por los socios; pero si con ello fueron infringidos los artículos 119 y 223 del Código de Comercio que invoca el registrador para denegar la cancelación solicitada, esa infracción no hace irresponsables a los encargados de la gestión social de San Miguel Hermanos por los contratos celebrados con personas extrañas a la compañía, pues el artículo 120 del mismo Código preceptúa que los encargados de la gestión social que contravinieren a lo dispuesto en el artículo anterior (119) serán solidariamente responsables para con las personas extrañas a la compañía con quienes hubieren contratado en nombre de la misma.

"Conforme con el anterior precepto, resolvió el Tribunal Supremo de España en sentencia de 6 de diciembre de 1887, que aun cuando una sociedad mercantil no haya tenido existencia legal, los actos y contratos que con tal carácter realizan los socios son eficaces contra los mismos en favor de los terceros con quienes han contratado."

En el caso citado se asumió por este Tribunal que la escritura de cancelación de hipoteca había sido otorgada en forma contraria a lo dispuesto en los artículos 119 y 223 del

Código de Comercio (edición de 1911, correspondiente a los artículos 98 y 142, edición de 1932, que ya hemos citado) y que, por lo tanto, la sociedad estaba disuelta al otorgarse la escritura. Sin embargo, este Tribunal resolvió que la escritura era inscribible, en vista de que el socio gestor que actuó en forma contraria al artículo 98 actual es responsable para con las personas extrañas a la compañía con quienes hubiera contratado en nombre de la misma, de acuerdo con el artículo 99 (antes 120) del mismo Código. Ahora bien, el hecho de que un supuesto socio gestor sea responsable personalmente a un extraño contratante por otorgar un contrato nulo por ser contrario al artículo 98 del Código de Comercio no implica que ese contrato sea inscribible. Un contrato nulo no se convierte en válido, a los fines de su inscripción, porque el otorgante sea responsable personalmente, en daños y perjuicios o en otra forma, a la otra parte contratante. Una cosa es la responsabilidad personal que surja del hecho de hacer un contrato nulo, y otra cosa es la validez o nulidad intrínseca de ese contrato, a los fines de su inscripción en el Registro. El sistema nuestro de registros tiene por objeto la protección de terceros o futuros adquirentes. El interés potencial de estos últimos es que no se inscriba un contrato contrario a la ley u otorgado por una persona que carezca de capacidad para hacerlo. Ese interés inmanente debe ser protegido por los Registradores. Los futuros adquirentes no reciben protección por el hecho de que una de las partes en el contrato original sea responsable personalmente a la otra parte contratante. Por lo tanto, el caso de *San Miguel* v. *Registrador de la Propiedad*, debe ser considerado como revocado, al igual que el de *Rodríguez* v. *El Registrador*, 22 D.P.R. 786, en donde se adopta la misma tésis. (Como cuestión de hecho, la doctrina sentada en el caso de *San Miguel* fué afectada y menoscabada, sin revocación expresa, en el caso posterior ya citado de *Gandía* v. *Registrador*.)

En el caso de autos, el Registrador llegó a la conclusión correcta de que, de acuerdo con los documentos presentados y de acuerdo con la ley, en la fecha en que se otorgó la escritura de compraventa presentada a inscripción, la sociedad en cuestión ya estaba disuelta y el otorgante Pedro Nido carecía de capacidad y de poder para actuar como socio gestor de una entidad ya disuelta. La disolución de la sociedad implicaba la terminación de las facultades de Pedro Nido como socio gestor, o sea, como socio administrador, y él no podía vender los bienes sociales como tal socio gestor. *Paz Vda. de Barletta* v. *Registrador*, 43 D.P.R. 870. El artículo 147 del Código de Comercio dispone lo siguiente:

"Artículo 147.—Desde el momento en que la sociedad se declare en liquidación, cesará la representación de los socios administradores para hacer nuevos contratos y obligaciones, quedando limitadas sus facultades, en calidad de liquidadores, a percibir los créditos de la compañía, a extinguir las obligaciones contraídas de antemano, según vayan venciendo, y a realizar las operaciones pendientes."

No obstante lo que hemos expuesto, en la escritura en cuestión Pedro Nido compareció, no solamente como socio gestor, sino también como liquidador. Hemos ya determinado que él no podía actuar como socio gestor. Pero, como liquidador, él actuó válidamente al vender la propiedad en cuestión, ya que su actuación fué ratificada por la totalidad de los socios que formaban la sociedad. Veamos.

No habiendo pacto en contrario, un socio gestor o administrador, al disolverse la sociedad, puede continuar como liquidador, sin que sea necesario un nuevo nombramiento a tal efecto, de acuerdo con los artículos 147 y 148 del Código de Comercio, disponiendo el 148 que en las sociedades colectivas o en comandita, no habiendo contradicción por parte de alguno de los socios, continuarán encargados de la liquidación los que hubiesen tenido la administración del caudal social. La personalidad de la sociedad en liquidación no se extingue, sino que continúa bajo la representación de los liquidadores,

para todos los efectos consignados en el artículo 147. *Banco Colonial, etc.* v. *Registrador*, 4 D.P.R. 524, 1ra. ed; 289, 2da. ed; *Sobrino, Fernández y Cía., Sucrs.* v. *El Registrador de San Juan*, 27 D.P.R. 459; *Quiñones* v. *El Registrador*, 18 D.P.R. 130; Sentencias del Tribunal Supremo de España de 28 de febrero de 1936 y de 20 de enero de 1940. Al cumplirse el término de duración de una sociedad, ella queda disuelta, y al socio administrador o gestor incumben los deberes y responsabilidades de liquidador. Sentencias del Tribunal Supremo de España de 23 de junio de 1903; 12 de octubre de 1888; 3 de octubre de 1894; 3 de abril de 1902; Gay de Montellá, Código de Comercio Comentado, Tomo 2, pág. 509; Benito, Derecho Mercantil, Tomo 3, pág. 395.

Queda planteado el problema en cuanto a la extensión y límites de los poderes de un liquidador. Una vez disuelta totalmente una sociedad mercantil por la expiración del término prefijado, ella no puede hacer nuevas operaciones y pasa al período de liquidación, que consiste en dar cumplimiento a las obligaciones previamente constituídas (*Sotelo Hnos. & Cía.* v. *Tribl. Contribuciones*, 68 D. P. R. 630, 632), en percibir los créditos de la compañía, extinguir las obligaciones contraídas de antemano, según vayan venciendo y en realizar las operaciones pendientes. (Art. 147, Código de Comercio).

En *Sucesión Jiménez* v. *Registrador*, 48 D.P.R. 858, se resolvió que, disuelta una sociedad mercantil, en ausencia de una autorización expresa, el liquidador carece de poder y de facultad para vender bienes inmuebles, en ausencia de una relación adecuada entre tal venta y sus deberes como liquidador, y en ausencia de relación entre tal venta y el pago o cumplimiento de cualquiera de las obligaciones de la sociedad. En *Miramar Realty Corp.* v. *Registrador*, 44 D.P.R. 829, había tal relación ya que la sociedad civil fué organizada precisamente para la compraventa de bienes inmuebles, y se declaró inscribible una escritura de venta hecha por un liquidador.

Se podría alegar que el propósito primordial de una liquidación es el de reducir los bienes sociales a numerario o dinero, a través de ventas, a los fines de llevar a cabo la desaparición definitiva de la entidad. Gay de Montellá, ob. cit., Vol. 2, pág. 505. De otro lado, una venta inadecuada sería perjudicial a los socios, y, por lo tanto, tales ventas deberían estar revestidas de ciertas garantías, como la de celebración de subastas. Ahora bien, no existe posibilidad de perjuicio alguno si todos los socios han prestado su consentimiento en cuanto a que se lleve a cabo tal venta. En *Banco Colonial etc.* v. *Registrador,* supra, y en *Sobrino Fernández y Cía.* v. *El Registrador de San Juan,* supra, todos los socios habían autorizado previamente, y en forma expresa, al liquidador para que vendiese los bienes sociales. Se resolvió que la venta hecha por el liquidador era válida e inscribible. El mismo criterio debe ser aplicado al caso de autos, en que la totalidad de los socios ratificaron específicamente, y en forma expresa, la venta hecha por el liquidador Pedro Nido. El consentimiento de los socios, aunque posterior, le imprimió validez a la venta. En una liquidación los socios son comuneros. *Vega* v. *Tossas,* 70 D.P.R. 392, nota en pág. 396. Ellos ratificaron la venta y, por lo tanto, ésta era válida e inscribible. A los fines de esta cuestión, no vemos diferencia alguna entre una autorización previa y una ratificación posterior.

La Dirección General de los Registros de España, ya ha resuelto esta cuestión, en Resoluciones de 10 de marzo de 1909 y 14 de junio del mismo año. En el primer caso los liquidadores estaban expresamente facultados para vender los bienes sociales, resolviéndose que ellos tenían capacidad para realizar la venta de una fábrica. En el segundo caso los socios de una sociedad en liquidación ratificaron una venta hecha por unos liquidadores. Se resolvió que era válida e inscribible la venta, indicándose que el consentimiento de los socios puede suplir la falta de capacidad de los liquidadores,

aunque debe observarse que la venta fué realizada para el pago de obligaciones contraídas por la sociedad.

Siendo inscribible la escritura de compraventa (núm. 181 de noviembre de 1948, ante el notario Luis Domínguez Rovira), actuó erróneamente el Registrador recurrido al negarse a inscribirla.

*Debe revocarse la nota recurrida y ordenarse la inscripción de tal escritura.*